Filed 9/3/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| WARD CONNERLY et al., | C073753 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34201180000966CUWMGDS) |
| v. | |
| STATE OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge. Reversed.

Pacific Legal Foundation, Meriem L. Hubbard, Ralph W. Kasarda, and Joshua P. Thompson for Plaintiffs and Appellants.

Munger, Tolles & Olson, Bradley S. Phillips, Soraya C. Kelly, and Puneet K. Sandhu; Equal Justice Society, Eva Paterson and Allison S. Elgart; ACLU Foundation of Southern California, Mark D. Rosenbaum, and Hector O. Villagra; Lawyers' Committee for Civil Rights, Oren Sellstrom; and Asian Americans Advancing Justice, Eugene Lee for California Common Cause, League of Women Voters of California, and California NAACP as Amicus Curiae for Plaintiffs and Appellants.

1

Kamala D. Harris, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Marc A. LeForestier, Supervising Deputy Attorney General, and Kari Krogseng, Deputy Attorney General, for Defendants and Respondents State of California and California Citizens Redistricting Commission.

Toledo Don, Margaret Carew Toledo, Stacy E. Don; Donna L. Neville, Chief Counsel, Steven Benito Russo, Senior Staff Counsel for Defendant and Respondent California State Auditor.

## INTRODUCTION

This case involves two policy issues that are often viewed as controversial; (1) racial, ethnic, and gender preferences, and (2) the decennial redistricting process. But because this appeal turns on a counterintuitive quirk of California appellate law, we need not reach the merits.

By statute, "When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." (Code Civ. Proc., § 472c, subd. (a));[1] see *City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 746 ["The issue of leave to amend is always open"]; *Wennerholm v. Stanford University School of Medicine* (1942) 20 Cal.2d 713, 719-720 [overruling prior rule, even though § 472c as enacted in 1939 was prospective].)

Contrary to longstanding rules generally precluding a party from changing the theory of the case on appeal (see, e.g., *Panopulos v. Maderis* (1956) 47 Cal.2d 337, 340-341; *Richmond v. Dart Industries, Inc*. (1987) 196 Cal.App.3d 869, 874, 879 (*Richmond*)), a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action, thereby showing the trial court "abused its discretion"

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

(§ 472c, subd. (a)) in not granting leave to amend.[2]  The plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading."  (*Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 (*Cooper*); see *People ex rel. Brown v. Powerex Corp.* (2007) 153 Cal.App.4th 93, 112 (*Brown*).)

Respondents largely ignore these rules, and contend plaintiffs cannot raise a new theory on appeal.  In particular, they contend the new theory would require a hearing to resolve *contested facts* that they have had no chance to litigate.  But the effect of their arguments, whether or not intended as such, is to concede plaintiffs have articulated a new legal theory that necessitates a factual resolution.  Thus, this dispute is not ripe for resolution by demurrer.[3]

We reverse with directions to the trial court to grant plaintiffs leave to amend the complaint, without expressing any views on the merits of plaintiffs' claim.

## BACKGROUND

In 2008 and 2010, the People of California, exercising their reserved initiative powers, changed the way California's State Senate, State Assembly, Congressional, and Board of Equalization voting districts are adjusted after each national census, assigning the corresponding duties to the California Citizens Redistricting Commission (Commission).  (See *Vandermost v. Bowen* (2012) 53 Cal.4th 421, 442-448 (*Vandermost*)

---

[2]  The statute dictates that we frame the issue as whether the trial court "abused its discretion" in denying leave to amend. (§ 472c, subd. (a).)  This is arguably misleading and unfair.  The trial court ruled on the facts and law that were presented in the amended complaint and moving papers on the demurrer, and plaintiffs have not challenged the trial court's resolution of those issues, impliedly conceding the trial court *made no mistake*.  However, we have been presented with and review a different theory.  Nothing in our opinion should be read to impugn the trial court, despite the fact that we must characterize this as a case of abuse of discretion by that court in denying leave to amend, as the statute frames it.

[3]  A second claim--that Connerly's new theory is legally infirm--is not persuasive; as we explain *post*, respondents have not shown he cannot state a prima facie case.

[tracing redistricting history, adoption of Commission, and criteria used for drawing the various electoral boundaries].) The fine details of the method of selecting commissioners are unnecessary to describe. In summary, Government Code section 8252 provides that the State Auditor forms an "Applicant Review Panel" that narrows that pool to 60 candidates, who are subject to peremptory strikes by specified officials. The State Auditor randomly selects eight commissioners from the remaining pool, giving preference to certain political parties, and these eight commissioners select the remaining six, again giving preference to certain political parties, but the "six appointees are to be 'chosen to ensure the commission reflects this state's diversity, including, but not limited to, racial, ethnic, geographic, and gender diversity.' ([Gov. Code, § 8252, subd. (g)].) The Commission, however, need not comply with any specific ratio or formula. (*Ibid*.)" (*Vandermost*, *supra*, 53 Cal.4th at p. 445.)

Plaintiffs Ward Connerly and the American Civil Rights Foundation (collectively, Connerly) sued defendants State of California (State), the State Auditor, and the Commission (defended on appeal by the State), alleging the method of selecting members of the Commission violated Proposition 209 (Cal. Const., art. I, § 31), in that it gave improper preferences based on race, ethnicity, and gender.

Connerly then filed an amended complaint, again asserting the selection process for the last six commissioners violated Proposition 209, but adding that the "Applicant Review Panel" also improperly considers race, ethnicity, and gender. These were characterized as "facial" challenges to Government Code section 8252, subdivision (g) based on Proposition 209, for which various remedies were sought.

The State and State Auditor demurred in part on the grounds that Proposition 209 does not apply to the selection of public officers, only to public employees. The trial court sustained the demurrer without leave to amend on this ground. Connerly timely appealed from the judgment.

4

## DISCUSSION

As we suggested *ante*, Connerly has effectively abandoned his amended complaint, and proposes a new legal theory--but no new facts--in his opening brief, explicitly citing the authority of section 472c, subdivision (a).  We therefore have no occasion to further describe the amended complaint, as we presume the trial court properly sustained the demurrer thereto.  (See fn. 2, *ante*.)

Connerly now seeks leave to assert the selection process violates the federal equal protection clause, arguing in the alternative:  "This Court should rule on this new claim, because it concerns an issue of a law applied to undisputed facts.  In the alternative, Connerly requests that this Court grant leave to amend the Complaint to specifically allege a violation of the federal Equal Protection Clause."[4]

Both the State and State Auditor contend it is unfair for Connerly to raise this theory on appeal because they have not had a chance to disprove it *factually*.  They almost entirely ignore section 472c, which, as explained in the Introduction, allows a

---

[4] "Proposition 209 overlaps, but is not synonymous with, the principles of [federal equal protection] . . . .  Under equal protection principles, all state actions that rely upon suspect classifications must be tested under strict scrutiny, but those actions which can meet the rigid strict scrutiny test are constitutionally permissible.  Proposition 209, on the other hand, prohibits discrimination against or preferential treatment to individuals or groups regardless of whether the governmental action could be justified under strict scrutiny.  [¶] In this respect, the distinction between what the federal Constitution permits and what it requires becomes particularly relevant.  [Citation.]  To the extent the federal Constitution would permit, but not require, the state to grant preferential treatment to suspect classes, Proposition 209 precludes such action."  (*Connerly v. State Personnel Bd.* (2001) 92 Cal.App.4th 16, 42-43 (*Connerly*).)  No party argues a case that fails under Proposition 209 would *necessarily* fail under equal protection principles.  The trial court ruled Proposition 209 does not cover selection of public officers, only employees.  No party claims that would be a sure defense under the equal protection clause.

plaintiff to propose new theories on appeal. (See *Cooper*, *supra*, 70 Cal.2d at p. 636; *Brown, supra,* 153 Cal.App.4th at p. 112.)[5]

The State does not cite or discuss section 472c, an inexplicable oversight given that it was briefed by Connerly.[6]

The State Auditor addresses the statute briefly, and relies on the following quotation from an older case: "More fundamental, however, is the fact that the allegations . . . are completely foreign to the cause of action attempted to be stated in the original complaint. It is no abuse of discretion for a trial court to refuse leave to a plaintiff to amend his complaint to state an entirely different cause of action from that originally pleaded." (*Taliaferro v. Industrial Indem. Co.* (1955) 131 Cal.App.2d 120, 122-123.) *Taliaferro* concluded all of the plaintiff's theories--including a new claim that he had been overcharged by the defendant for many years--could be raised as defenses in a threatened collection against him. (*Id.* at pp. 121-122.) The passage relied on by the State Auditor, which comes after the court's analysis of the lack of merit of the plaintiff's allegations, is arguably dicta, and is limited to the situation where a plaintiff is trying to

---

[5] Connerly also relies on *other* exceptions to the general rule against raising new issues on appeal, such as where constitutional rights or public policy are at issue, or the case does not turn on new facts. (See, e.g., *Hale v. Morgan* (1978) 22 Cal.3d 388, 394; *Richmond*, *supra*, 196 Cal.App.3d at p. 879.) We need not address these alternate contentions, in light of our ultimate conclusion.

[6] Amici curiae (California Common Cause, League of Women Voters of California, and California NAACP), too, fail to cite or discuss the statute. They do seek to raise a new issue, namely, that Connerly has deprived respondents of the ability to remove his federal equal protection claims to federal court. The parties are silent on this point. We decline to address this new claim. (See *Professional Engineers in California Government v. Kempton* (2007) 40 Cal.4th 1016, 1047, fn. 12 [generally, amicus curiae cannot expand the issues beyond those raised by the parties].)

plead an entirely different dispute between the parties, unlike this case.**7** And, as Connerly points out, quoting a Supreme Court case regarding when a new cause of action relates back, so as to embrace a previously-sued fictitious party as against a statute of limitation defense, "Some early cases held that an amendment stating any new cause of action could not relate back and that a plaintiff could not amend so as to change the legal theory of his action. [Citations.] Subsequent cases held that a mere change in legal theory would not prevent an amendment from relating back but that an amendment would not relate back if it set forth 'a wholly different cause of action,' i.e., 'a wholly different legal liability or obligation.' " (*Austin v. Massachusetts Bonding & Ins. Co.* (1961) 56 Cal.2d 596, 600-601.) Although Connerly's case does not raise the issue of relation back of causes of action, *Austin* illustrates that a mere change in legal theory does not change the nature of the factual dispute. Connerly has not strayed from his central factual claim that the composition of the Commission was infected by invidious discrimination. There is no reason to deviate from the well-established rule that section 472c allows a plaintiff to propose new theories on appeal from the sustaining of a demurrer without leave to amend.

Nor are we persuaded by the claim that Connerly should be barred from raising a new theory on appeal because he withheld the equal protection claim from the trial court for "tactical" reasons. All complaints are drafted for "tactical" reasons, that is, to achieve the greatest relief for the client most efficiently. The fact that the instant complaint was found wanting raises *precisely* the circumstance section 472c was designed to address--to

---

**7** We observe that Taliaferro was a notorious vexatious litigant. (See *Taliaferro v. Hoogs* (1965) 236 Cal.App.2d 521 [upholding vexatious litigant statute adopted in 1963; Stats. 1963, ch. 1471, § 1, p. 3038]; Comment, *The Vexatious Litigant* (1966) 54 Cal.L.Rev. 1769, 1775 & fn. 32 [listing many appeals by Taliaferro].) That fact may have influenced the *Taliaferro* court's desire to end the case. However, the State Auditor's broad application of this quote from *Taliaferro* would emasculate section 472c as consistently interpreted by the reviewing courts of this state for many years.

give the plaintiff a final opportunity to propose new facts or legal theories to establish a cause of action. Here, unlike in the authority cited to us, Connerly's proposed new theory is not inconsistent with his existing complaint. (Cf. *CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1538-1543 (*CAMSI IV*) [for the first time in rehearing petition, the plaintiff proposed a new legal theory that counsel had disavowed at oral argument in the Court of Appeal; held, claim came too late *and* the claim was withheld for tactical reasons].) *CAMSI IV* emphasized it was "the *trial court's* discretion" that was being reviewed and concluded: "The trial court could rationally have regarded [the plaintiff's] choice among theories as essentially tactical and not subject to interference by the court." (*Id.* at pp. 1542-1543.)

Even assuming (without deciding) that *CAMSI IV* was correct in suggesting that a party could be barred from *timely* raising new theories on appeal merely because the timing appeared tactical, the situation here is distinguishable. Here, the equal protection claim was "a potentially effective amendment . . . both apparent and consistent with the plaintiff's theory of the case" which even the *CAMSI IV* court indicated would be a proper amendment. (*CAMSI IV*, *supra*, 230 Cal.App.3d at p. 1542.) And Connerly timely proposed the amendment by presenting it in his *opening brief on appeal*. To read *CAMSI IV* to bar *any* presentation of theories on appeal that were known to the plaintiff before the filing of the complaint, but not presented therein, would be inconsistent with section 472c. We decline to read *CAMSI IV* in the manner suggested by the State.

As for the claims about new evidence, the State Auditor contends the "strict scrutiny" test applicable to Connerly's claims is fact-specific, adding: "Respondents should have been afforded an opportunity to develop the factual record" to satisfy that burden; and "the parties have not had a reasonable opportunity to present factual evidence of the state's important or compelling governmental interests in the alleged race or sex classifications and whether such alleged classifications were substantially or narrowly tailored to accomplish such governmental interests."

8

Consistent with this view, the State contends it "has not had the opportunity to submit evidence to demonstrate its compelling interest in ensuring diversity of the [C]ommissions's membership or the State's interest in diverse public bodies in order to ensure the legitimacy of those bodies in the eyes of all its citizens."  This is also consistent with the beginning of the State's briefing, where it also made the point that it is unfair for Connerly to raise a new *factual* issue on appeal.

However, at the end of its briefing, the State cursorily asserts that Connerly's case fails *as a matter of law*.  The State Auditor, too, adds this claim at the end of its briefing, in more depth.  Respondents largely rely on *Grutter v. Bollinger* (2003) 539 U.S. 306 [156 L.Ed.2d 304] (*Grutter*), a case involving higher education, a subject triggering additional First Amendment concerns, as outlined by Justice Powell in his "fifth vote" decision in *Regents of Univ. of Cal. v. Bakke* (1978) 438 U.S. 265, 311-315 [57 L.Ed.2d 750, 785-786] (lead. opn. of Powell, J.).  (See *Fisher v. Univ. of Texas* (2013) 570 U.S. __ [186 L.Ed.2d 474, 483-485] (*Fisher*)); *Grutter*, *supra*, 539 U.S. at pp. 322-325 [156 L.Ed.2d at pp. 328-330].)  The passage of *Grutter* relied on by the State quotes part of an amicus brief by the United States; we provide a more complete quotation from *Grutter*:

> "We have repeatedly acknowledged the overriding importance of preparing students for work and citizenship, describing education as pivotal to 'sustaining our political and cultural heritage' with a fundamental role in maintaining the fabric of society.  [Citation.]  This Court has long recognized that 'education . . . is the very foundation of good citizenship.'  [Citation.]  For this reason, the diffusion of knowledge and opportunity through public institutions of higher education must be accessible to all individuals regardless of race or ethnicity.  The United States, as *amicus curiae*, affirms that 'ensuring that public institutions are open and available to all segments of American society, including people of all races and ethnicities, represents a paramount government objective.' " (*Grutter*, *supra*, 539 U.S. at pp. 331-332 [156 L.Ed.2d at p. 334].)

To the extent respondents interpret this passage to apply to *all governmental institutions* rather than merely higher educational institutions, and in *all circumstances*, that overstates the holding of *Grutter*, which allowed the use of race as an amorphous

9

"plus factor" in a law school's admission process, after a court trial. (*Grutter*, *supra*, 539 U.S. at pp. 333-340 [156 L.Ed.2d at pp. 335-340]; see also *Fisher*, *supra*, 570 U.S. at pp. __ [186 L.Ed.2d at pp. 483-489] [ruling after cross-motions for summary judgment in a higher education case].) Such a program must be subjected to strict judicial scrutiny in its implementation, that is, how it works factually, which must be narrowly tailored to meet the goal of diversity without straying into invidious discrimination. (*Fisher*, *supra*, 570 U.S. at pp. __ [186 L.Ed.2d at pp. 486-489].) "*Grutter* did not hold that good faith would forgive an impermissible consideration of race. It must be remembered that 'the mere recitation of a "benign" or legitimate purpose for a racial classification is entitled to little or no weight.' [Citation.] Strict scrutiny does not permit a court to accept a school's assertion that its admissions process uses race in a permissible way without a court giving close analysis to the evidence of how the process works in practice." (*Id*. at p. __ [186 L.Ed.2d at p. 488]; see *Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 338, fn. 20 [Prop. 209 case: "A legislative body cannot preclude searching judicial review of presumptively unconstitutional racial classifications with findings to the effect that such classifications are necessary, however much supporting evidence is claimed to exist"].)

Thus, *Grutter* does not, *of itself*, defeat Connerly's claims, as respondents have implicitly conceded. Factual disputes remain as to equal protection claims.[8]

_____

[8] The State's citation to *Bredesen v. Tenn. Judicial Selection Comm'n* (2007) 214 S.W.3d 419--bereft of any discussion or analysis--is unpersuasive. The Tennessee Supreme Court upheld as against an equal protection challenge a Governor's act under a Tennessee judicial selection process of rejecting a list of nominees after the sole Black nominee withdrew. The court assumed the governor's act constituted a racial classification, and construed *Grutter* to mean that racial diversity as one selection factor among many was unobjectionable. (*Id*. at pp. 437-439.) The court read *Grutter* to mean there was a "compelling state interest in seeking to have a diverse judiciary." (*Id*. at p. 438.) But *Bredesen* turned on its specific facts, involving the peculiarities of the Tennessee judicial selection plan, and is not on point here.

Thus, from the parties' briefing, it appears Connerly can plead at least a *prima facie* case of equal protection violations.  (See *Connerly*, *supra*, 92 Cal.App.4th at pp. 36-39, 44-45.)  The answer is to apply section 472c, subdivision (a), allow Connerly to amend the complaint again to clarify his new theories, and give respondents the chance to defend the Commission's selection provisions to try to show they comport with federal equal protection principles.[9]

### DISPOSITION

The judgment is reversed with directions to the trial court to grant Connerly leave to amend the complaint consistent with this opinion.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)

                                                                      _____DUARTE_____, J.

We concur:

_____BUTZ_____, Acting P. J.

_____HOCH_____, J.

---

[9] The first Commission has completed its work.  But the issues Connerly raises are likely to recur after the next census, and no party suggests the issues are either moot or unripe.