Filed 7/7/15  Medeiros v. George Hills Company, Inc. CA3

# NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Sacramento)

----

| | |
|---|---|
| THOMAS MEDEIROS, | C076021 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2010-00070076-CU-FR-GDS) |
| v. | |
| GEORGE HILLS COMPANY, INC., | |
| Defendant and Respondent. | |

Defendant George Hills Company, Inc. (George Hills), is the administrator for the City of Palo Alto (the City), processing claims against the City under the Government Claims Act (Gov. Code, § 810 et seq.).[1]  Plaintiff Thomas Medeiros had previously alleged that employees of George Hills falsely represented in a letter to him that his claim against the City was untimely.  The letter was accompanied by a notice of late claim (§ 911.3, subd. (a)) that did not contain the admonitions required under the statute to

---

[1]  Undesignated statutory references are to the Government Code.

1

"apply without delay . . . for leave to present a late claim" and to consult "immediately" with counsel. (*Medeiros v. George Hills Company*, *Inc.* (Jan. 14, 2013, C068995) [nonpub. opn.] slip opn. at p. 4 (hereafter Slip Opn. [contained in the record of this appeal, C076021]).) In our prior *Medeiros* opinion, we reversed a judgment of dismissal, finding Medeiros had adequately alleged a cause of action for intentional fraud. (Slip Opn. at pp. 5-6.)

On remand, Medeiros filed a second amended complaint.[2] George Hills filed its answer, and then moved for judgment on the pleadings on the ground that the litigation privilege—codified in Civil Code section 47—immunized its conduct. The trial court granted the motion and entered a judgment of dismissal. Medeiros filed a timely notice of appeal after receipt of the notice of entry of judgment.

On appeal, Medeiros again conflates a possible basis for pursuit of a late claim against a public entity with a litigation opponent's liability in tort for committing alleged extrinsic fraud in the course of litigation. (See Slip Opn., *supra*, at p. 7.) He contends "equity," section 911.3, and his constitutional right of petition, do not allow operation of the litigation privilege to prevent his claim of damages for intentional extrinsic fraud. We shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On appeal from a ruling sustaining a demurrer without leave to amend, we assume the truth of well-pleaded factual allegations, shorn of any legal conclusions. (*Fuller v. First Franklin Financial Corp.* (2013) 216 Cal.App.4th 955, 959 (*Fuller*).) Since a motion for judgment on the pleadings (formerly nonstatutory, now codified at Code Civ.

---

[2] Exceeding the scope of our remittitur, Medeiros also included a count alleging negligent misrepresentation. He abandons any argument in connection with this theory on appeal.

Proc., § 438) is the equivalent of a demurrer with the same purpose and effect, the same rules apply. (*People v. $20,000 United States Currency* (1991) 235 Cal.App.3d 682, 691.) Thus, as with a demurrer, we may also consider facts that are the proper subject of judicial notice, such as the appellate opinion in *People v. Medeiros* (Aug. 1, 2007, H028934) [nonpub. opn.]), to which Medeiros adverts (absent the underlying facts) in his pleading. (*Bach v. McNelis* (1989) 207 Cal.App.3d 852, 864-865; Code Civ. Proc., § 438, subd. (d).)

In December 2001 (meaning the genesis of this dispute is nearly 14 years old), Medeiros was part of a work crew dispatched to clean the grease interceptor at the Palo Alto Hills Golf and Country Club. Later that morning, the employees of the municipal wastewater department discovered grease flowing out of manholes into a nearby creek, which they quickly connected with the activities of the work crew uphill. The trial court found Medeiros guilty of three felony and misdemeanor pollution and discharge offenses as an accomplice. A divided panel of the Court of Appeal, Sixth Appellate District, reversed his convictions because it did not find sufficient evidence of his knowing assistance in the dumping of grease into the sewer system. (*People v. Medeiros*, *supra*, H028934.) The remittitur issued on October 2, 2007.

Medeiros, who has only a high school education, filed a claim with the City for malicious prosecution on the entity's standard claims form in January 2008. (The claim itself is not part of the record.) By letter dated February 7, 2008, George Hills informed Medeiros that his claim was untimely because the "incident occurred" in December 2001 and his convictions were in spring 2005, therefore, George Hills would not take any action on the claim because Medeiros had only two years in which to file a claim stating, "You have no viable claim against the City." The two employees of George Hills involved in processing Medeiros's claim were well versed in the application of statutes of limitation to claims against public entities, and through these representations concealed

3

from Medeiros that a cause of action for malicious prosecution did not accrue until the remittitur issued for the reversal of his convictions (the fact of which was "readily available to any person"), after which he then had six months to file his claim with the City. George Hills's employees intended for Medeiros to rely on the representations (seeking thereby to gain favor with the City), and Medeiros in fact relied on them.

Included with the letter was a notice of late claim (see § 911.3, subd. (a)), which stated that the City would not be taking any action on Medeiros's claim, citing section 911.2 (which contains the six-month limitations period for presenting a tort claim against public entities). Although the notice appended the text of various provisions of the Government Code (including section 911.4, prescribing the procedures for application to file a late claim, and section 946.6, prescribing the procedures for resort to court on the denial of permission to file a late claim), the notice did not include either the text of section 911.3 itself, nor the disclosures required under section 911.3 when entities return a claim without action as untimely.[3] George Hills's employees omitted the statutory admonitions intentionally in order to prevent Medeiros from detecting their misrepresentation about the expiration of the limitations period. As a result, Medeiros suffered damages in the amount of his lost cause of action.

The trial court found the litigation privilege applied. It rejected Medeiros's two arguments (not renewed on appeal), finding that the exception for malicious prosecution did not apply to a tort action against a defendant that is independent of the underlying

---

[3] In pertinent part, section 911.3 requires the notice to state in substance that, "Your only recourse at this time is *to apply without delay* to (name of public entity) for leave to present a late claim. See Sections 911.4 to 912.2, inclusive, and Section 946.6 of the Government Code. . . . [¶] You may seek the advice of an attorney of your choice in connection with this matter. If you desire to consult an attorney, you should do so *immediately*." (Italics added.)

claim against the City, and that George Hills's employees made the statements at issue at a time when litigation over the claim against the City was reasonably being contemplated.

## DISCUSSION

We review a ruling on a demurrer de novo (*Fuller*, *supra*, 216 Cal.App.4th at p. 962), and may consider theories either to sustain or overturn the ruling even if not raised in the trial court (*id*. at pp. 966-967; *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460; Code Civ. Proc., § 472c). As noted above, it is proper to apply these principles to a ruling on a motion for judgment on the pleadings.

### 1.0  The Litigation Privilege Does Not Have an Exception for Extrinsic Fraud

Although his introduction invokes the concept of equity, Medeiros's analysis rests on a purported exception in the common law to the litigation privilege. The cases do not support the premise.

*Silberg v. Anderson* (1990) 50 Cal.3d 205 reaffirmed the vitality of the litigation privilege. A plaintiff sought tort and contract damages against his opponent's attorney for concealing bias on the part of a purportedly neutral expert. (*Id*. at p. 210.) *Silberg* disavowed precedent that conditioned the litigation privilege for communications made in the course of a judicial proceeding to achieve the objects of the litigation on an "interest of justice" criterion; it concluded the "evils inherent in permitting derivative tort actions" far outweighed the price of leaving the "occasional 'unfair' result" without redress. (*Id*. at p. 213.) It explained the privilege protected the right of access to judicial proceedings because it shielded litigants and witnesses from the threat of liability and promoted zealous advocacy on the part of attorneys, a position that the United States Supreme Court had endorsed as a matter of federal common law. (*Id*. at pp. 213-214.) It is not a matter of protecting shady practitioners; it is a matter of protecting honest ones from the fear of derivative liability. (*Id*. at p. 214.) In an aside upon which Medeiros seizes,

*Silberg* noted, "To allow a litigant to attack the integrity of evidence after the proceedings have concluded, *except in the most narrowly circumscribed situations, such as extrinsic fraud*, would impermissibly burden, if not inundate, our justice system." (*Ibid*., italics added.)

From this dictum Medeiros would derive authorization to pursue a derivative tort action for damages where a litigation opponent is guilty of extrinsic fraud. But *Silberg* was not suggesting any such thing. It cited three authorities in support of this dictum. The first was the United States Supreme Court case *precluding* an action for damages. (*Briscoe v. LaHue* (1983) 460 U.S. 325 [75 L.Ed.2d 96].) The second was *Pico v. Cohn* (1891) 91 Cal. 129, which explored the circumstances under which a litigant could *set aside a judgment* on the basis of extrinsic fraud, limiting the meaning of that term to situations in which "the unsuccessful party is really prevented, by the fraudulent contrivance of his adversary, from having a trial . . . ." (*Id*. at p. 134.) The third was *Kachig v. Boothe* (1971) 22 Cal.App.3d 626 (an earlier decision by the author of *Silberg*), which found the absence of extrinsic fraud that would allow setting aside the prior judgment (*Kachig*, at p. 636), and the litigation privilege otherwise precluded derivative tort liability (*id*. at p. 641). Indeed, in authority cited by plaintiff, the Supreme Court subsequently explained its comment in *Silberg*: "This reference to 'extrinsic fraud' apparently relates to the narrow doctrine permitting *a collateral attack on a judgment* . . . ." (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 643, fn. 5, italics added.)

Medeiros's remaining authority for an exception to the litigation privilege is equally inapposite. *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15 concluded the prelitigation communications at issue were not subject to the privilege (*id*. at p. 40); it then rejected a claim that extrinsic fraud is not privileged without any analysis of the premise, simply finding that extrinsic fraud was not present (*id*. at p. 41). That is a far cry from an affirmative holding that a derivative tort action may proceed on the basis

6

of extrinsic fraud.  Our decision in *Home Ins. Co. v. Zurich Ins. Co.* (2002) 96 Cal.App.4th 17 asserted that the litigation privilege does not preclude *an equitable action to set aside a settlement agreement*.  (*Id*. at p. 26.)  Not only did we conclude extrinsic fraud was not present, we noted the normal remedy for extrinsic fraud was equitable relief from the tainted judgment, *not* an action in tort.  (*Ibid*.)  Similarly, *Navarro v. IHOP Properties, Inc.* (2005) 134 Cal.App.4th 834 found extrinsic fraud was not present, and "even when extrinsic fraud can be demonstrated, the aggrieved party may seek to set aside the judgment, but none of the [cited] cases . . . support the contention that a separate action for damages may be pursued" (thus the litigation privilege applied).  (*Id*. at p. 844.)[4]

Consequently, even if George Hills's conduct amounted to extrinsic fraud (an issue we do not need to resolve), it is still subject to the litigation privilege as communications in reasonable anticipation of litigation (an issue Medeiros does not dispute on appeal).  We thus reject his argument.

## 2.0  The Litigation Privilege Is Not Unconstitutional

Medeiros asserts that the litigation privilege, codified since 1872, violates his right to petition under the California Constitution and therefore is unconstitutional.  He does not cite any authority supporting this bold proposition.

He attempts to analogize to *Voit v. Superior Court* (2011) 201 Cal.App.4th 1285. The parallel eludes us.  There, the superior court clerk refused to file the motion of a pro se incarcerated defendant for appointment of counsel because it did not cite precedent in support; the Court of Appeal issued a peremptory writ finding that the clerk's office had

---

**4** Medeiros's remaining case, *Kimes v. Stone* (9th Cir. 1996) 84 F.3d 1121, is not controlling (*People v. Linton* (2013) 56 Cal.4th 1146, 1182, fn. 8) and involves the inapposite context of applying the supremacy clause to California's litigation privilege.

7

exceeded the limits of its ministerial duties, resulting in the deprivation of the right of access to the courts. (*Id.* at pp. 1287-1288.) Nowhere is there any suggestion that a privilege can be unconstitutional because it insulates conduct from legal liability. As Medeiros otherwise does not develop this argument (which ignores the legislative prerogative over the creation of substantive rights), we will not pursue it further.

**3.0 The Government Claims Act Is Not an Exception to the Privilege**

As noted in *Action Apartment Assn.*, *Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1247, there can be "exceptions to the litigation privilege based on irreconcilable conflicts between the privilege and other coequal state laws." (Accord, *Komarova v. National Credit Acceptance*, *Inc.* (2009) 175 Cal.App.4th 324, 338-340 [privilege must yield to more specific statutes, and cannot shield actions Legislature sought to prohibit].)

Medeiros contends the privilege cannot nullify the protections for claimants that are created in section 911.3. Yet again, Medeiros is admixing his ability to pursue a claim against the City with his desire to recover damages from George Hills. The failure to comply with section 911.3 would have precluded the City from raising the timeliness of a claim presented to it within the applicable limitations period. (See *County of Alameda v. Superior Court* (1987) 195 Cal.App.3d 1283, 1287 [noting that the statute forfeits the issue of the timeliness of a claim, not the limitations period].) The litigation privilege does not have any effect on that remedy. It simply precludes Medeiros's ability to recover derivative damages from the City's agent. Since a conflict does not exist, let alone an irreconcilable conflict, no exception to the privilege exists under section 911.3.

8

## DISPOSITION

The judgment is affirmed.  Respondent George Hills Company, Inc., shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

                                                                   BUTZ                , J.

We concur:

BLEASE          , Acting P. J.

HOCH          , J.