Filed 7/30/24  Opperwall v. Bank of America CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| STEPHEN G. OPPERWALL,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>BANK OF AMERICA, N.A. et al.,<br><br>        Defendants and Respondents. | A168865<br><br>(Alameda County<br>Super. Ct. No. 22CV010352) |

Stephen G. Opperwall brings this lawsuit for wrongful foreclosure and related claims against the bank that foreclosed on his home, Bank of America N.A. (the Bank), and Quality Loan Service Corporation (Quality), the trustee that conducted the foreclosure sale under a deed of trust encumbering his home.  He appeals the judgment dismissing his action after the trial court sustained without leave to amend defendants' demurrer on the ground that the action is barred by the doctrine of res judicata.  Opperwall's appellate counsel acknowledges that the operative complaint, which Opperwall filed while appearing in propria persona, was poorly drafted and is "replete with extraneous matters," including arguments that had been rejected in prior litigation.  Nevertheless, Opperwall contends that the complaint alleged "ultimate facts" sufficient to state a cause of action for wrongful foreclosure and that the "unnecessary allegations Opperwall included in the [complaint] should be treated as surplusage."  Alternatively, he contends that even if the

1

claim for wrongful foreclosure was not well pled the proposed amended complaint, which is attached as an exhibit to the opening brief, demonstrates that Opperwall could plead a cause of action for wrongful foreclosure that is not barred by res judicata, along with several other related causes of action.

We find no error in the court's order sustaining the demurrer but conclude that Opperwall should be granted leave to file an amended complaint against the Bank. We agree with Quality, however, that its recording of a notice of default and a notice of sale are privileged and that Opperwall has not alleged and cannot allege that Quality acted with malice. Accordingly, we affirm the judgment in favor of Quality but reverse the judgment entered in favor of the Bank and remand with instructions to permit the filing of an amended complaint.

## BACKGROUND

In 2007, Opperwall obtained a $900,000 loan from the Bank to buy a house in Pleasanton, CA. The loan was secured by a Deed of Trust (Deed).

In February 2012, Opperwall filed a Chapter 13 bankruptcy petition. Opperwall's bankruptcy schedules stated that he owed the Bank $958,437.45 on the loan, including approximately $50,000 in arrears, and that the property was then worth $885,000. In April 2012, Opperwall submitted a Chapter 13 plan (the plan), which proposed that Opperwall would pay the arrearage on the loan through the trustee at a rate of $500 per month for 6 months, then $1,504.18 per month for 54 months. The plan further proposed that Opperwall would pay the bank directly $2,724.66 a month for the 60-month duration of the plan. Although the plan was premised on Opperwall obtaining a loan modification prior to confirmation of the plan, no loan modification was obtained and the plan was confirmed by the bankruptcy court.

2

In August 2014, the Bank moved to dismiss the bankruptcy case, alleging that no loan modification agreement had been made. The bankruptcy court denied the motion, finding that Opperwall had not breached the plan but that payments under the plan did not create a formal loan modification.

In September 2014, Opperwall filed an action against the Bank in state court, claiming that the Bank had agreed to a loan modification that it was no longer honoring. The action was removed to the bankruptcy court and later dismissed. In dismissing the claim, the bankruptcy court held that Opperwall's claim that he had entered into an agreement to modify the loan with the Bank before filing his bankruptcy petition was barred by the claim-preclusive effect of Opperwall's Chapter 13 plan and the order confirming that plan. The bankruptcy court also rejected Opperwall's assertion that his loan was modified by his Chapter 13 plan and the Bank's failure to object to the plan. The dismissal of that action was affirmed by both the federal district court and the Ninth Circuit Court of Appeals. (*Opperwall v. Bank of America, N.A.* (9th Cir. 2018) 727 Fed.Appx. 329.)

Opperwall completed the plan and the bankruptcy was discharged on May 9, 2017.

In June 2018, Opperwall filed a second action in state court against the Bank, repeating the allegations that the Bank had agreed to modify his loan but was not honoring that agreement. Again the action was removed to the bankruptcy court and dismissed. The bankruptcy court's conclusion that Opperwall's second action was precluded by the dismissal of his first action and the confirmation of his Chapter 13 plan was affirmed by both the federal district court and the Ninth Circuit Court of Appeals. (*Opperwall v. Bank of America, N.A.* (9th Cir. 2021) 847 Fed.Appx. 490.)

In June 2019, Quality recorded a Notice of Default (Default Notice) stating that Opperwall had been in default on his loan since March 1, 2015, that he owed "past due payments plus permitted costs and expenses" in the amount of $346,899.91 as of the date of the notice, and that the amount due would increase until the account becomes current. The notice further advised that if he failed to bring his account in good standing, the property may be sold without any court action.

In September 2019, Opperwall filed his third state court action against the Bank. His complaint alleged that the Notice of Satisfaction of Claim filed by the Bank in the bankruptcy proceeding eliminated Opperwall's obligations under the note and deed of trust that was secured by the property, and that therefore, the property was not subject to the June 2019 Default Notice that Quality had recorded. The trial court sustained a demurrer by the Bank and Quality and dismissed the action. This Court affirmed, holding that "the notice of satisfaction could not properly be interpreted to reflect satisfaction of the entire mortgage debt." (*Opperwall v. Quality Loan Serv. Corp.* (Nov. 17, 2021, A159461) [nonpub. opn.] 2021 Cal.App.Unpub. Lexis 7204, at p. *9.)

On April 7, 2022, Quality recorded a Notice of Trustee's Sale advising Opperwall that he was in default under the deed of trust and that, unless he took action to protect his property, it may be sold at a public sale. The notice set the sale for May 5, 2022, and indicated that the amount of the unpaid balance on the loan and other charges was $1,394,797.19.

On April 25, 2022, Opperwall filed the present action against the Bank and Quality.

On May 5, 2022, the property was sold at a public auction for $1,400,449.61 and a Trustee's Deed was recorded on May 19, 2022.

4

In February 2023, Opperwall filed a First Amended Complaint (hereafter complaint) in the present proceeding. The complaint asserts causes of action for wrongful foreclosure, quiet title, declaratory relief and application of Civil Code section 3275 (relief from forfeiture) based on allegations that (1) the amount owed listed in the Notice of Sale was excessive and (2) the value of the Property vastly exceeded the sale price. With respect to the first ground, the complaint alleges that the $1,394,797.19 reflected in the notice was excessive because the amount owed on the loan was constrained by the bankruptcy court's order approving and confirming his Chapter 13 plan, which "provided that the loan documents between Plaintiff and Bank of America would be modified by operation of bankruptcy law to provide for a principal balance of $899,746.16, an interest rate of 2% fixed, a monthly payment of $2,724.66, and a fully amortized amortization period of 40 years." The complaint alleges that because "Bank of America did not object to the Plan and did not object to the Confirmation Order and did not appeal the Confirmation Order . . ., based on completely controlling bankruptcy statutory law and case law, the documents and terms between Plaintiff and Bank of America became as stated in the Plan and Confirmation Order." Opperwall alleges that, when properly determined, the amount owing "was no greater than $734,158.62." With respect to the second ground, the complaint alleges only that the winning bid "at the trustee's sale was for the incorrect amount claimed by Bank of America plus one penny. At that time, the Real Property had an estimated value that vastly exceeded that amount."

The Bank demurred to the amended complaint, arguing, among other things, that the claims were barred by the doctrine of res judicata. Quality filed a joinder in the Bank's demurrer and also argued that its acts, as

5

alleged in the complaint, were privileged under Civil Code section 2924. The trial court sustained the demurrer over Opperwall's opposition, finding that the claims alleged were barred by the res judicata effect of the judgments entered against Opperwall in his three prior suits as well as the order confirming his Chapter 13 bankruptcy plan. The court rejected Opperwall's request for leave to amend to cure any "pleading insufficiency that is argued in any demurrer."

Opperwall timely appealed from the judgments dismissing his claims against the Bank and Quality.

## DISCUSSION

### I.   Standard of Review

" 'Because a demurrer both tests the legal sufficiency of the complaint and involves the trial court's discretion, an appellate court employs two separate standards of review on appeal. [Citation.] . . . Appellate courts first review the complaint de novo to determine whether or not the . . . complaint alleges facts sufficient to state a cause of action under any legal theory, [citation], or in other words, to determine whether or not the trial court erroneously sustained the demurrer as a matter of law. [Citation.]' [Citation.] 'Second, if a trial court sustains a demurrer without leave to amend, appellate courts determine whether or not the plaintiff could amend the complaint to state a cause of action.' " (*Boyd v. Freeman* (2017) 18 Cal.App.5th 847, 853.)

"Under the first standard of review, 'we examine the complaint's factual allegations to determine whether they state a cause of action on any available legal theory. [Citation.] We treat the demurrer as admitting all material facts which were properly pleaded. [Citation.] However, we will not assume the truth of contentions, deductions, or conclusions of fact or law [citation], and we may disregard any allegations that are contrary to the law

6

or to a fact of which judicial notice may be taken.' " (*Boyd v. Freeman*, *supra*, 18 Cal.App.5th at p. 853.) A demurrer will lie where the complaint " ' "has included allegations that clearly disclose some defense or bar to recovery." ' " (*Holiday Matinee, Inc. v. Rambus, Inc.* (2004) 118 Cal.App.4th 1413, 1421, italics omitted.)

"Under the second standard of review, the burden falls upon the plaintiff to show what facts he or she could plead to cure the existing defects in the complaint. [Citation.] 'To meet this burden, a plaintiff must submit a proposed amended complaint or, on appeal, enumerate the facts and demonstrate how those facts establish a cause of action.' " (*Boyd v. Freeman*, *supra*, 18 Cal.App.5th at pp. 853–854.)

## II. Wrongful Foreclosure

The trial court sustained respondents' demurrers on the ground that Opperwall's complaint was barred by the doctrine of res judicata. The court concluded that the allegations in the complaint "are identical to prior allegations in cases that resulted in final judgments on the merits in favor of the same defendants in this case, or parties in privity to the present defendants." In the trial court, Opperwall, representing himself, clearly stated, "This case seeks an adjudication of how much Opperwall owed to Bank of America as of 5/5/22. The request is that the amount that was owed was far less than the amount in the Notice of Trustee Sale." His argument was premised entirely on the allegations that his loan was modified by the bankruptcy plan. Had Opperwall repeated these arguments on appeal, we would likely agree with the trial court that his claim was barred by res judicata. (See *Colebrook v. CIT Bank, N.A.* (2021) 64 Cal.App.5th 259, 264 [claim for wrongful foreclosure barred by res judicata where validity of lender's deed was determined adversely to borrower in prior pre-foreclosure litigation].) On appeal, however, Opperwall, now represented by counsel,

7

concedes that there was no enforceable loan modification but argues that the operative complaint, when stripped of the surplus allegations regarding the loan modification, states a cause of action for wrongful foreclosure that is not barred by res judicata and that is legally sufficient.

To state a cause of action for wrongful foreclosure, Opperwall must allege, among other elements, that " ' " '[t]he trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust.' " ' " (*Turner v. Seterus, Inc.* (2018) 27 Cal.App.5th 516, 525).[1] "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.' [Citations.] This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity. [Citation.] . . . It is the burden of the party challenging the trustee's sale to prove such irregularity and thereby overcome the presumption of the sale's regularity." (*Melendrez v. D & I Investment, Inc.* (2005) 127 Cal.App.4th 1238, 1258.)

Opperwall asserts that the complaint "alleged in satisfaction of the first element that: the amount owed listed in the Notice of Sale was grossly

---

[1] A cause of action for wrongful foreclosure also requires proof that " ' " 'the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and . . . in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering.' " ' " (*Turner v. Seterus, Inc., supra*, 27 Cal.App.5th at p. 525.) Although the parties dispute whether a cause of action for wrongful foreclosure has a fourth element, we need not resolve that dispute in this action. (See *Majd v. Bank of America, N.A.* (2015) 243 Cal.App.4th 1293, 1307 [adding fourth element that " ' "no breach of condition or failure of performance existed on the mortgagor's or trustor's part which would have authorized the foreclosure or exercise of the power of sale" ' "].)

excessive . . . and the value of the Property vastly exceeded the sale price."
These allegations, however, are conclusory and unaccompanied by any
factual allegations necessary to establish a claim for wrongful foreclosure.
(See *Kalnoki v. First American Trustee Servicing Solutions, LLC* (2017)
8 Cal.App.5th 23, 45 [conclusory allegation that Trustee's Deed Upon Sale
falsely recites that the statutory requirements under Civil Code section 2924
have been met is insufficient to rebut the ordinary presumption that the sale
was conducted regularly]; *Melendrez v. D & I Investment, Inc., supra,*
127 Cal.App.4th at p. 1258 [" 'mere inadequacy of price, absent some
procedural irregularity that contributed to the inadequacy of price or
otherwise injured the trustor, is insufficient to set aside a nonjudicial
foreclosure sale' " ].) Opperwall's suggestion that the complaint alleges at
least one fact in support of his claim—"Respondents' improper acceleration of
the debt"—is not supported by the record. While he claims on appeal that the
Bank violated paragraph 22 of the deed of trust by accelerating the debt
without prior notice, the operative complaint includes no such allegations.
The complaint did not, as Opperwall suggests, allege "sufficient facts to place
Respondents on notice of the basis of his claim for wrongful foreclosure." As
such, Opperwall's complaint failed to allege a cause of action for wrongful
foreclosure.

Opperwall does not dispute that, absent a valid claim for wrongful
foreclosure, his remaining causes of action for declaratory relief and for relief
from forfeiture under Civil Code section 3275 also fail. Nor does Opperwall
contest respondents' argument that the complaint fails to allege a cause of
action to quiet title.

## III.   Leave to Amend to State a Cause of Action Against the Bank

Under Code of Civil Procedure section 472c, "When any court makes an
order sustaining a demurrer without leave to amend the question as to

9

whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made." "Contrary to long-standing rules generally precluding a party from changing the theory of the case on appeal [citations], a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action, thereby showing the trial court 'abused its discretion' [citation] in not granting leave to amend." (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460.) "The power to permit amendments is interpreted very liberally as long as the plaintiff does not attempt 'to state facts which give rise to a wholly distinct and different legal obligation against the defendant.' [Citation.] 'Great liberality is indulged in matters of amendment to the end that lawsuits may be determined upon their merits.' [Citation.] 'A change of theory as to the basis of recovery or as to the measure of damages is not a change of cause of action or the substitution of a new and different action for the original.'" (*Herrera v. Superior Court* (1984) 158 Cal.App.3d 255, 259 [permitting amendment of the complaint where "the causes of action in the amended complaint were different legal theories arising from the same basic facts"].)

Here, the proposed complaint alleges that under section 22 of the Deed, the Bank was required to give Opperwall written notice prior to accelerating the loan following his default and that Opperwall did not receive such notice.[2]

---

[2] Section 22 of the Deed reads: "Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . . The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this

The proposed complaint also adds allegations that, despite the assertion in the Default Notice that the borrower had been contacted to explore options to avoid foreclosure, in accordance with Civil Code section 2923.55, subdivision (b)(2), no such contact was made. The proposed complaint alleges that respondents wrongfully foreclosed upon the property by "(1) failing to comply with section 22 of the [Deed], which required [the Bank] to give Plaintiff specific notice before acceleration; (2) stating in the Default Notice that [the Bank] had declared all sums secured by the [Deed] immediately due and payable, notwithstanding [the Bank's] lack of compliance with section 22; (3) failing to contact Plaintiff to assess his financial situation and to explore options for Plaintiff to avoid foreclosure, as required by Civil Code section 2923.55[, subdivision] (b)(2); and (4) stating in the Sale Notice that the amount then due to [the Bank] was the '[a]mount of unpaid balance and other charges' totaling $1,394,797.19, notwithstanding [the Bank's] failure to provide advance notice to Plaintiff of potential acceleration in compliance with section 22 of the [Deed]." The proposed complaint again alleges that respondents "also wrongfully foreclosed upon the Property by selling it for only $1,400,449.61 at a time when its fair market value greatly exceeded that amount." The proposed complaint also adds a cause of action for breach of contract based on the alleged improper acceleration of the loan, breach of the Homeowner Bill of Rights based on the alleged failure to comply with the Civil Code section 2923.55, and a violation of Business and Professions Code section 17200 based on both sets of allegations.

---

Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."

The Bank contends that the proposed amendment is improper because it is based on new and different facts which give rise to distinct legal claims. Alternatively, the Bank contends that the new facts do not allege an actionable wrong under any theory.

Initially, we reject the argument that the proposed amendment is impermissible. The central claim in the operative complaint was that the Bank wrongfully foreclosed on his property, causing Opperwall to lose his interest in it. Opperwall timely requested leave to amend and has proposed specific amendments that add additional facts and theories in support of this claim.

Citing *CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1542 (*CAMSI IV*), the Bank argues that the trial court did not abuse its discretion in denying leave to amend because Opperwall's proposed amendments are not "apparent and consistent with the [complaint's] theory of the case." We disagree that the proposed amendments are not consistent with the claim asserted in the operative complaint and find *CAMSI IV* distinguishable. In that case, the court held that the trial court properly sustained without leave to amend defendant's demurrer to plaintiff's claim for negligence on the ground that it was barred by the statute of limitations. (*Id.* at p. 1541.) At oral argument, in response to a question by the court, the plaintiff expressly indicated that it was not seeking leave to amend to add a cause of action for nuisance, which the court noted "in appropriate circumstances would be subject to more favorable limitations rules." (*Id.* at p. 1539.) In a petition for rehearing, plaintiff asserted that it should be granted leave to amend to allege a cause of action for nuisance based on a new appellate decision filed after oral argument. (*Id.* at p. 1541.) The court denied the petition on the ground that a reviewing court need not consider

12

points raised for the first time on petition for rehearing. (*Id.* at p. 1542.) The court added that, even if it were to consider the argument, it "would find no abuse of discretion." (*Ibid.*) The court explained, "Even where there is no request for leave to amend (or where, as here, the only arguable request was wholly insufficient to suggest whether or how the plaintiff could amend) 'the question as to whether or not [the trial] court abused its discretion' in denying leave to amend remains open on appeal. [Citation.] But it is the trial court's discretion that is at issue; the reviewing court may only determine, as a matter of law, whether the trial court's discretion was abused. In our view an abuse of discretion could be found, absent an effective request for leave to amend in specified ways, only if a potentially effective amendment were both apparent and consistent with the plaintiff's theory of the case. . . . Absent any indication whatsoever that [plaintiff] might wish to change theories, the trial court was by no means obliged to invite [plaintiff] to do so. There is a rational basis for hypothesis that (until it received this court's ruling) [plaintiff] would have been disinclined to shift to nuisance and trespass theories. . . . The trial court could rationally have regarded [plaintiff's] choice among theories as essentially tactical and not subject to interference by the court." (*Id.* at pp. 1542–1543, italics omitted; but see *Connerly v. State of California, supra*, 229 Cal.App.4th at p. 464, [questioning but not deciding whether *CAMSI IV* "was correct in suggesting that a party could be barred from timely raising new theories on appeal merely because the timing appeared tactical" italics omitted].) Unlike in *CAMSI IV*, Opperwall's proposed amendments are not inconsistent with the allegations of the operative complaint and were timely asserted along with his opening brief on appeal.

We also reject the Bank's argument that the proposed amendments fail to state an actionable wrong under any theory of liability. The Bank asserts that a standard notice of default given under Civil Code sections 2924, subdivision (a)(1) and 2924c, such as that given by Quality in this instance, satisfies section 22 of the Deed and that no separate, prior, or additional notice is required. The proposed amended complaint alleges, however, that "[t]he Default Notice provided by Quality to Plaintiff did not comply with section 22 of the [Deed], in that: (1) Quality, not [the Bank], sent the Default Notice to Plaintiff; (2) the Default Notice did not inform Plaintiff of a deadline to cure his default; (3) the Default Notice did not inform Plaintiff that failure to cure his default *could* result in acceleration (indeed, the Default Notice asserted that [the Bank] had already "declared and does hereby declare all sums secured [by the Deed] immediately due and payable"); (4) the Default Notice did not inform Plaintiff of his right to reinstate the terms of the [Deed] after acceleration; and (5) the Default Notice did not inform Plaintiff of his right to bring a court action to assert the non-existence of a default or any other defense of Plaintiff to acceleration and sale."

Whether the Default Notice provided by Quality complied with the requirements of section 22 of the Deed cannot be resolved as a matter of law in the present appeal. While the notice undoubtedly included some of the information required by section 22 of the Deed, it says nothing about Opperwall's right to bring a court action to assert the non-existence of a default or any other defense to acceleration and sale. In addition, as Opperwall notes, the Default Notice states somewhat confusingly both that "you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is

14

normally five business days prior to the date set for the sale of your property," and that the beneficiary "has declared and does hereby declare all sums secured [by the Deed] immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." Finally, the proposed complaint alleges that the Bank, not Quality, must give notice of acceleration to satisfy the requirements of section 22, and the Bank has provided no facts or legal argument disputing that allegation.

The Bank also argues that "Opperwall fails to allege any facts—as opposed to conclusions—to show that he suffered any damage from any respect in which the notice of default failed to satisfy the requirements of section 22 of the deed of trust." The Bank's suggestion that Opperwall "did not need a [Bank]-provided notice to know his reinstatement and redemption rights" because he was a lawyer, and "if he did not already know them, he could easily learn by performing basic legal research," is not a proper argument in support of a demurrer. The Bank's argument that Opperwall "does not and cannot allege that he would have reinstated his loan or redeemed his property if only he had been given the promised notice of acceleration" conflicts with the allegation in the proposed complaint that "[i]n the absence of acceleration, as of May 1, 2022, Plaintiff could have paid the delinquent amount then due under the [Deed]." This allegation is sufficient to overcome a demurrer.

The Bank's argument that Opperwall cannot allege a failure to comply with Civil Code section 2923.55 fares no better. Section 2923.55 governs the steps that mortgagees, trustees, beneficiaries, or authorized agents are obligated to take prior to recording a notice of default. Among these is the requirement that the servicer make contact with the buyer at least 30 days

15

prior to the entry of the notice of default "in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." (Civ. Code § 2923.55, subd. (b)(2).) The proposed complaint alleges that the Bank was required, but failed, to contact him between the date of his default as set forth in the notice (March 1, 2015) and the date of the Default Notice (June 4, 2019). Citing *Rossberg v. Bank of America, N.A.* (2013) 219 Cal.App.4th 1481, 1494, for the proposition that the required contact may occur well in advance of recording the notice of default, the Bank argues that "Opperwall's complaints in his first two suits alleged that he had been in repeated contact with [the Bank] about modifying his loan—far more contact than [Civil Code] section 2923.55 requires" and that " [t]he sham pleading doctrine bars Opperwall from contradicting those allegations or omitting them from any amended complaint without explanation." In support of its argument, the Bank cites to communication that was alleged to have occurred in 2012. Opperwall responds that any contact Opperwall had with the Bank prior to the date of his default as set forth in the notice has no bearing on his claim. He asserts, "It is axiomatic that if Opperwall's default occurred as of March 1, 2015 . . . , the required contact must be made thereafter."

We decline to hold as a matter of law that any contact occurring before the date specified in the notice of default cannot satisfy the requirement of Civil Code section 2923.55, but at the same time, the present record does not allow us to conclude that the 2012 contact between Opperwall and the Bank necessarily does. The Bank's reliance on *Rossberg v. Bank of America, N.A.*, *supra*, 219 Cal.App.4th at pages 1494–1495 is misplaced. In that case, the court merely held that contact in July 2009 was sufficient to support recording of a notice of default in September 2009 because it was more than

16

30 days before the recording of the notice. It does not address the question here—whether contact made prior to the date of default identified in the notice is sufficient. At least one case has addressed this issue and concluded that communications occurring prior to the default are not sufficient. In *Bever v. Cal-W. Reconveyance Corp.*, (E.D. Cal. Oct. 30, 2014, No. 1:11-CV-1584 AWI SKO) 2014 U.S. Dist. Lexis 154220, at pages *21–*22, the court held that under Civil Code section 2932.5, the predecessor statute to section 2932.55, contacts made regarding prior delinquencies are not sufficient for later-occurring delinquencies. The court explained that the statute was enacted in response to the foreclosure crisis and that the "contact requirement was intended in part 'to change the foreclosure process so that avoidable foreclosures could be avoided successfully.' [Citation.] An additional call to address the then existing conditions surrounding a current delinquency appears consistent with the language and purpose of [Civil Code] § 2923.5; a contact that is nearly 2-years old and in relation to a different delinquency does not." (*Ibid*.) Here, the contacts described in the prior litigation occurred not just well before the date of default identified in the notice, but also before confirmation of Opperwall's bankruptcy plan. Nothing in the record explains the basis of the March 1, 2015 date identified in the notice. Thus, it is unclear whether that default should be considered based on a different delinquency from that which prompted the 2012 communication by the Bank. Under these circumstances, we cannot conclude that Opperwall should be denied the opportunity to attempt to state a cause of action based on the violation of Civil Code section 2923.55.

**IV.  Leave to Amend to State a Cause of Action Against Quality**

Civil Code section 2924, subdivision (b), provides in relevant part that, "[i]n performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information

17

provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage . . . ." Section 2924, subdivision (d), further shields a trustee from tort liability by granting it a qualified privilege for mailing, publication, and delivery of notices of default and trustee's sale and performing its other statutory duties in connection with foreclosure of a deed of trust. The parties agree that these trustee privileges are "qualified privileges" subject to the malice exception. (*Schep v. Capital One, N.A.* (2017) 12 Cal.App.5th 1331, 1337; *Kachlon v. Markowitz* (2008) 168 Cal.App.4th 316, 333–334, 343.) In this context, " 'malice' means that the defendant (1) ' "was motivated by hatred or ill will towards the plaintiff," ' or (2) ' "lacked reasonable grounds for [its] belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." ' " (*Schep v. Capital One, N.A.*, *supra*, 12 Cal.App.5th at p. 1337.) In the context of the present demurrer, the question is whether Opperwall's proposed complaint contains adequate affirmative allegations of malice to find the qualified privilege inapplicable. (See *Smith v. Hatch* (1969) 271 Cal.App.2d 39, 47 ["Since the qualified privilege creates a presumption that the communication is made innocently and without malice [citations], the pleadings must contain affirmative allegations of malice in fact, and malice must exist as a fact in order to destroy the privilege"].)

Quality asserts that Opperwall neither does nor can allege that it acted out of malice in recording and serving the Default Notice or Notice of Sale. In this regard, the proposed complaint alleges that Quality's "wrongful foreclosure and sale of the Property evidenced a wanton disregard of the consequences and of the rights and feelings of Plaintiff." Opperwall argues specifically that "[t]he quintupling of the amount owed in less than three

18

years due to Quality's unilateral acceleration of the debt—without compliance with the deed of trust's terms—" was sufficient to allege malice. Quality, however, is not alleged to have done anything other than record and deliver the two notices based on information it received from the Bank. It had no obligation to give notice of the acceleration of the loan, nor was it required to communicate with Opperwall regarding alternatives to foreclosure—the two allegedly wrongful acts on which the claims in the proposed amended complaint are premised.

Finally, Opperwall's argument that Quality must remain a party to the litigation because it is "a necessary party to Appellant's cause of action for wrongful foreclosure" is meritless. *Majd v. Bank of America, N.A., supra,* 243 Cal.App.4th 1293, 1307, relied on by Opperwall, merely holds that where the trustee who conducted the sale is not party to an action for wrongful foreclosure against a lender, the complaint must include allegations that the trustee was the bank's agent or was otherwise acting on the bank's instructions. Opperwall cites no case holding that a party may be required to defend an action against it for which there is no basis for liability.

19

## DISPOSITION

The judgment entered in favor of Quality is affirmed.  The judgment entered in favor of the Bank is reversed and the matter remanded with instructions to the trial court to permit Opperwall to file a second amended complaint against the Bank.  The parties shall bear their own costs on appeal.

GOLDMAN, J.

WE CONCUR:

BROWN, P. J.
DOUGLAS, J. *

---

* Judge of the Superior Court of Contra Costa County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.