Filed 9/28/21  Hacker v. Macoy Capital Partners CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| RON HACKER, Plaintiff and Appellant, v. MACOY CAPITAL PARTNERS, INC., et al., Defendants and Respondents. | B306067 (Los Angeles County Super. Ct. No. 19STCV12728) |

APPEAL from an order of the Superior Court of Los Angeles County, Randolph M. Hammock, Judge.  Affirmed.

Law Offices of Vincent J. Quigg, Vincent J. Quigg; and Levi Reuben Uku for Plaintiff and Appellant.

Sklar Kirsh, Ian S. Landsberg and William H. Dance for Defendants and Respondents.

———————————

This case arises out of a soured business arrangement between appellant Ron Hacker and Henri Levy, who allegedly purchased an apartment building together for $800,000 at a foreclosure sale. Shortly after their purchase, a serious conflict arose between the two men, their relationship fractured, and Hacker lost his interest in the apartment building under the terms of a written agreement between him and Levy. Three months later, the building was sold by Levy to a third party.

Hacker subsequently sued numerous defendants, including Levy, his companies, Levy's lawyer, and Levy's alleged co-conspirators. The latter group includes the respondents in this appeal, Macoy Capital Partners, Inc. (Macoy) and its owner and president, Mitchell Ohlbaum (Ohlbaum), who brokered loans for the third-party purchaser.

Hacker's operative complaint alleges that respondents conspired with Levy to defraud him of his interest in the apartment building. Despite finding pleading deficiencies, the trial court provided Hacker multiple opportunities to cure the defects. Hacker responded by submitting three complaints and 15 evidentiary exhibits, along with oral argument at several separate hearings. Although the trial court overruled the demurrers of Levy, his companies, Levy's lawyer, and others, it eventually sustained respondents' demurrer without leave to amend in a detailed, 19-page order.

On appeal, Hacker contends that his allegations were sufficient and that, in any event, the trial court should have allowed a further amendment. We disagree.

Hacker's pleadings against respondents are insufficient at the most basic levels. His allegations that Macoy and Ohlbaum unlawfully interfered with his prospective economic advantage,

and participated in a civil conspiracy against him with Levy and other defendants, are fundamentally inconsistent with Hacker's other allegations against Levy. In particular, Levy's alleged wrongful conduct occurred months before respondents brokered a third-party loan on the apartment building, and the operative complaint alleges that Levy *concealed* Hacker's interest in the property—and Levy's own fraudulent behavior—from subsequent purchasers and lenders, including Macoy and Ohlbaum.

Hacker's claims for unlawful business practices and declaratory relief are derivative of his defective tort claims. For the first time on appeal, Hacker attempts to raise the possibility of an action for quiet title to revive his derivative claims, but he fails to provide adequate factual and legal support for this contention. Hacker's final claim, alleging that Ohlbaum intentionally inflicted emotional distress on him, has been waived on appeal.

Hacker has not produced any sufficient justification for having yet another opportunity to amend his pleading, and the trial court did not abuse its discretion in refusing to let him do so. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Hacker's Business Deal with Levy

On January 4, 2019, Hacker and Levy executed a written agreement to buy an apartment building at a foreclosure sale.[1]

---

[1] When reviewing a judgment on a demurrer, we accept the facts as pled in the complaint. (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1034 ["in considering the merits of a demurrer, 'the facts alleged in the pleading are

They each agreed to provide funds for the venture, with the property being held by Gaelle II, LLC (Gaelle), a corporate entity that both parties controlled.

Hacker contributed $75,000 to the initial purchase. Levy also purportedly agreed to pay Hacker the difference between the actual cost of the property and $970,000. Per the agreement, "[t]o secure the payment to Hacker, Levy shall provide Hacker a [n]ote secured by a [d]eed of [t]rust against the [p]roperty." The note and deed of trust would be held by Levy's attorney until Hacker fulfilled his obligations under the agreement, which included evicting the apartment building's tenants.

On January 8, 2019, enroute to the foreclosure sale, Levy demanded that Hacker sign off on an amendment to the original agreement, threatening that he would not attend the sale if Hacker did not immediately agree. Among other things, the amendment gave Levy the option to require Hacker to purchase the property outright within 30 days. Hacker signed the amendment, and the pair thereafter purchased the apartment building for $800,000.[2]

Conflict soon arose between Hacker and Levy. On January 29, 2019, Levy allegedly transferred the property from

deemed to be true, however improbably they may be' "].) Accordingly, this factual background draws heavily from the allegations in Hacker's second amended complaint (SAC).

[2] Given the $800,000 foreclosure price, Hacker would therefore have been entitled to a secured note in the amount of $170,000 ($970,000 minus the $800,000 acquisition cost) to be paid by Levy upon the fulfillment of Hacker's contractual obligations.

Gaelle to another company, 4865 Bakman, LLC, over which Hacker had no control.

On January 31, 2019, Levy gave notice that he was exercising his option to make Hacker buy the property within 30 days. When Hacker could not complete the purchase in time, he subsequently lost his interest in the property.

## B.    Respondents' Alleged Involvement

On April 5, 2019, Levy sold the property to GNP Enterprise LLC (GNP) which partially financed the purchase with a loan from Finance of America Commercial, secured by a deed of trust for the property. Macoy allegedly brokered this loan.

On April 12, 2019, Hacker sued Levy and several others (but not Macoy or Ohlbaum) for their allegedly wrongful actions in alienating him from the property. Hacker also recorded a lis pendens against the property.[3]

In early-to-mid April 2019, Macoy lent GNP an additional sum of $100,000, secured by a deed of trust. The deed was recorded on April 16, 2019. Ohlbaum was personally involved in this transaction.

## C.    The Lawsuit Against Respondents

On May 3, 2019, Hacker filed his first amended complaint (FAC), which added several defendants, including GNP and its principals. Among other things, Hacker alleged that Levy had reneged on his obligation to deliver the deed of trust securing the $170,000 note which Levy owed Hacker under the original agreement.

---

[3] On April 3, 2019, Hacker had attempted to file his lawsuit and lis pendens, but that filing was rejected by the court's electronic filing system.

5

On June 7, 2019, Hacker added Macoy to the lawsuit by means of a Doe amendment.

On August 5, 2019, Hacker added Ohlbaum to the lawsuit by means of a Doe amendment.

On September 6, 2019, Macoy and Ohlbaum successfully demurred to that complaint, but the trial court gave Hacker leave to amend.

On October 7, 2019, Hacker filed the operative SAC in which he sued Macoy and Ohlbaum for negligent and intentional interference with prospective economic advantage, civil conspiracy, unfair business practices in violation of Business and Professions Code section 17200. He sued Macoy separately for declaratory relief[4] and Ohlbaum separately for intentional infliction of emotional distress.

On December 9, 2019, Macoy and Ohlbaum demurred to the SAC. The court issued a tentative ruling sustaining the demurrer without leave to amend, but advised Hacker to be prepared to demonstrate the possibility of a successful amendment as to each cause of action.

On February 19, 2020, following argument, the court indicated it would adopt its tentative ruling sustaining the demurrer without leave to amend. However, when Hacker claimed to have obtained newly discovered evidence that would allow him to successfully amend his claims against Macoy and Ohlbaum, the court agreed to hold a second hearing to consider this additional evidence, instructing Hacker to submit his offer of proof by March 4, 2020.

---

[4] Macoy was also named as a defendant in Hacker's judicial foreclosure cause of action, but was later dropped from it.

On April 14, 2020, when the court reconvened, Hacker argued against the tentative ruling on the basis of his tardy declaration, to which he attached 15 evidentiary exhibits. The trial court concluded that at least 11 of those exhibits were not "newly discovered" evidence, as they consisted of information known or available to Hacker before he filed the SAC. The trial court also determined that Hacker's late-filed evidence contained no new facts which, if pled, could save Hacker's claims against Macoy and Ohlbaum.

The court thereafter issued its final order sustaining respondents' general demurrer without leave to amend. Hacker timely appealed.

## DISCUSSION

Hacker contends that the trial court erred in sustaining the demurrer to all of the causes of action pled against Macoy and Ohlbaum. Our review is de novo. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264, disapproved on another ground in *Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 939, fn. 13.)

Alternatively, Hacker contends that the court should have granted him leave to further amend, an issue we review for an abuse of discretion. (*Vaca v. Wachovia Mortgage Corp.* (2011) 198 Cal.App.4th 737, 743.)

" '[O]n appeal the plaintiff . . . bear[s] the burden of proving there is a reasonable possibility the defect in the pleading can be cured by amendment.' " (*Everett v. State Farm General Ins. Co.* (2008) 162 Cal.App.4th 649, 655.) "To show abuse of discretion, [the] plaintiff must show in what manner the complaint could be amended and how the amendment would change the legal effect of the complaint, i.e., state a cause of action." (*Buller v. Sutter*

*Health* (2008) 160 Cal.App.4th 981, 992; accord, *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636 [to establish an abuse of discretion, the plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading"].)[5]

## A. Intentional and Negligent Interference with Prospective Economic Advantage

The torts of intentional and/or negligent interference with prospective economic advantage, alleged against both McCoy and Ohlbaum, have many overlapping elements, and we will discuss them together. These torts require, inter alia, the existence of an economic relationship between the plaintiff and a third party, actual disruption of that relationship by the defendant, and economic harm proximately caused by the defendant. (*Port Medical Wellness, Inc. v. Connecticut General Life Ins. Co.* (2018) 24 Cal.App.5th 153, 182-183 [as to intentional interference];

---

[5] Hacker contends in general terms that the trial court erred by requiring him to present newly discovered evidence in order to substantiate his allegations against Macoy and Ohlbaum, and in not considering his preexisting arguments at the final demurrer hearing. However, the trial court's requirement of newly discovered evidence was only to demonstrate that further amendment of the SAC would not be futile, and the trial court's final ruling on the demurrer explicitly analyzes not just Hacker's offer of proof, but his arguments and allegations connected to the original SAC. We are skeptical of Hacker's insinuation that he has not been given sufficient opportunity to amend his complaint in light of the several opportunities he was afforded by the trial court to collect evidence and present arguments.

*Crown Imports, LLC v. Superior Court* (2014) 223 Cal.App.4th 1395, 1404 [as to negligent interference].)

Although Hacker's SAC alleges the existence of his economic relationship with Levy, it repeatedly alleges that the Levy/Hacker relationship had been disrupted *well before respondents' involvement in this transaction.* By Hacker's own account, Levy had started alienating Hacker from the profits of the apartment building as early as January 19, 2019—a full three months before respondents first brokered a loan on the property. And, Hacker admits he lost his interest in the property in February 2019 when he could not comply with Levy's demand to purchase the building within 30 days pursuant to the option in the amended agreement.

On appeal, Hacker does not explain how respondents could have disrupted an economic relationship that was already fractured, or how they could have caused Hacker to lose profits or property interests that had already been taken from him by Levy. He simply has not shown that respondents disrupted the economic relationship between himself and Levy. Additionally, Hacker fails to provide any relevant legal authority that could support his theory of economic interference. (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 822 [failure to substantiate argument with legal authority can make it impossible for an appellant to "affirmatively demonstrate error on the record before the court"].)

Both torts also require that the harmful interference to economic relationship be caused by an independently wrongful act. (*Ixchel Pharma, LLC v. Biogen, Inc.* (2020) 9 Cal.5th 1130, 1142 ["interfering with prospective economic advantage requires pleading that the defendant committed an independently

9

wrongful act"].)  In the case of negligent interference with economic interest, this is shown by the defendant's breach of a duty of due care owed to the plaintiff.  (*North American Chemical Co. v. Superior Court* (1997) 59 Cal.App.4th 764, 787).

Hacker does not articulate how the act of later brokering loans on disputed property for a third party is an independently wrongful act.  While he suggests that respondents somehow owed him a duty to thoroughly investigate his claims against the property—including by contacting Hacker personally—before engaging in any financial activity involving the property, Hacker cites no supporting legal authority for this proposition.  (*In re S.C.* (2006) 138 Cal.App.4th 396, 408 ["To demonstrate error, [the] appellant must present meaningful legal analysis supported by citations to authority"].)  We see no reasonable possibility that Hacker can successfully amend his claims for intentional and/or negligent interference with prospective economic advantage.

**B.    Civil Conspiracy**

A civil conspiracy requires "the formation and operation of a conspiracy, the wrongful act of any of the conspirators thereto and damage resulting therefrom."  (*117 Sales Corp. v. Olsen* (1978) 80 Cal.App.3d 645, 649.)  Each conspirator must have come to " 'a mutual understanding to accomplish a common and unlawful plan.' "  (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 652.)  They must " 'have actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose.' "  (*Favila v. Katten Muchin Rosenman LLP* (2010) 188 Cal.App.4th 189, 206.)

Hacker does not explain on appeal what sort of illegal arrangement Macoy and Ohlbaum entered into with Levy, or the existence of some mutual understanding to accomplish an

10

unlawful objective. Moreover, as we have said, Hacker's claims against Levy contradict his claims against respondents. Both the FAC and SAC allege that Levy failed to disclose Hacker's interest in the property—and Levy's own alleged fraud—from subsequent purchasers and lenders, including Macoy and Ohlbaum. Hacker's briefing does not clarify how respondents could have conspired with Levy to defraud Hacker while Levy simultaneously concealed Hackers' interests from them. (See *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 ["If the [SAC] contradicts . . . facts pleaded in [an appellant's] first two complaints, we will take judicial notice of the earlier complaints and disregard inconsistent allegations, absent an explanation for the inconsistency"].)

Hacker has not carried his burden of demonstrating a reasonable possibility that amendment can cure his defective civil conspiracy claim. (*Doe v. Roman Catholic Archbishop of Los Angeles* (2016) 247 Cal.App.4th 953, 960 [in reviewing a proposed amendment on appeal, "[w]e . . . need not accept allegations containing . . . 'unsupported speculation' "].)[6]

---

[6] On appeal, Hacker specifically relies on two emails in order to demonstrate that respondents had actual knowledge of Levy's fraud before they recorded the deed of trust securing the second loan against the property on April 16, 2019, and that the trial court should therefore have allowed another amendment. Exhibit 15 consists of two emails sent by Ohlbaum. The first, on April 10, 2019, was sent to Judith Sender, an escrow officer, and Gabriel Perez, the owner of GNP (which, at the time, was in the process of purchasing the apartment building from Levy). Ohlbaum asked Sender to prepare a deed of trust for the April 16 loan, briefly references a separate escrow proceeding, and

11

## C. Remaining Causes of Action

Hacker concedes on appeal that his claims for unfair business practices and declaratory relief are derivative of his claims for economic interference and civil conspiracy. Yet he argues for the first time on appeal that, even if leave to amend was properly denied as to the economic interference and civil conspiracy claims, he can nevertheless support his derivative claims with a quiet title action.

At the outset, we note that Hacker cannot seek leave to *amend* his complaint to add a new cause of action. A plaintiff cannot add new causes of action to a complaint under the guise of an amendment; he must obtain the trial court's permission to supplement his original complaint. (*Community Water Coalition v. Santa Cruz County Local Agency Formation Com.* (2011) 200 Cal.App.4th 1317, 1329.)

Hacker argues that his new quiet title claim is not a new and separate cause of action, but instead constitutes a new legal theory which demonstrates that he can successfully amend his unfair business practice and declaratory relief claims. (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460 ["Contrary to long-standing rules generally precluding a party from

---

requests the payment of fees when that escrow closes. Hacker's conclusions about this email are entirely speculative. The second email, a three-sentence confirmation from Ohlbaum to Levy's attorney that the deed of title for the April 16 loan was recorded does not show that respondents were aware of Hacker's lis pendens, recorded on April 12, or that they had actual knowledge of Levy's fraud. This argument is similarly conjectural, as are the conclusions Hacker draws with respect to unrelated financial deals involving respondents, Levy, Perez, and/or GNP.

12

changing the theory of the case on appeal [citations], a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action, thereby showing the trial court 'abused its discretion' [citation] in not granting leave to amend" (fn. omitted)].)

Assuming, *arguendo*, that Hacker's assertion of a quiet title claim constitutes a new theory rather than a new cause of action, we find that the allegations supporting Hacker's quiet title theory are fatally compromised by the same defects involving his economic interference and conspiracy claims. A claim for quiet title requires a plaintiff to submit "[t]he title . . . as to which a determination . . . is sought." (Code Civ. Proc., § 761.020, subd. (b).) Yet Hacker repeatedly claims that Levy never gave (or intended to give) Hacker the $170,000 note that he was allegedly owed, or the deed of trust securing the note. Hacker does not allege any other basis for claiming title to the property. His purported claim for quiet title irreparably conflicts with his other allegations against Levy.

Hacker also fails to support his quiet title allegations with adequate legal argument. Hacker claims, without citations to relevant authority, that he is entitled to ownership of the apartment building free and clear of Macoy's $100,000 lien, in part due to Macoy's actual knowledge of Hacker's claims against Levy at the time the loan was recorded. As we have said, Hacker has not sufficiently alleged facts showing any actual knowledge on the part of Macoy. More troublingly, Hacker neglects to make any legal arguments in support of these theories. We therefore treat these arguments as waived. (*Lee v. Kim* (2019) 41 Cal.App.5th 705, 721 [an appellant bears the burden of

13

" 'present[ing] *argument and legal authority* on *each point raised*' "].)

Lastly, we note that Hacker forfeited his claim for intentional infliction of emotional distress against Ohlbaum by failing to raise the issue in his opening brief. (*Nolte v. Cedars-Sinai Medical Center* (2015) 236 Cal.App.4th 1401, 1409 [an appellant's "failure to raise [an] issue[ ] in his brief forfeits the issue on appeal"].)

## D.    Conclusion

Because the complaint does not state facts sufficient to constitute any of the causes of action raised against Macoy or Ohlbaum, and because Hacker has not shown that there is a reasonable possibility that any of the defects can be cured by additional amendment, the trial court did not abuse its discretion in refusing to allow a further amendment to the pleadings.

## DISPOSITION

The order is affirmed. Respondents are entitled to their costs on appeal.

NOT TO BE PUBLISHED

CRANDALL, J.*

We concur:

---

*\* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.*

14

ROTHSCHILD, P. J.

BENDIX, J.