Filed 8/3/22  Garlick v. Wells Fargo Bank CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sutter)

----

| | |
|---|---|
| LYNN MARGARET GARLICK et al., | C093378 |
| Plaintiffs and Appellants, | (Super. Ct. No. CVPR200000949) |
| v. | |
| WELLS FARGO BANK, N.A., | |
| Defendant and Respondent. | |

Petitioners and appellants Lynn Garlick and Jerome Tenney, as the current trustee of the Lynn Margaret Garlick Revocable Trust (the trust), appeal from a judgment dismissing their petition against the Trust's former trustee, respondent Wells Fargo Bank, N.A. (Wells Fargo).[1]  The petition asserts causes of action against Wells Fargo and others arising from trust transactions alleged to have been orchestrated by Lynn's former

---

[1]  For convenience, we will refer to Lynn by her first name.  We will refer to Lynn and Tenney collectively as "Lynn."

1

daughter-in-law, Brandi Lynn Garlick (Brandi). These transactions are generally alleged to have been the product of undue influence and financial elder abuse.

With respect to Wells Fargo, the petition alleges that Brandi ordered or caused Lynn to order a series of distributions that substantially depleted the assets of the trust. The petition also alleges that Wells Fargo breached its duties as trustee by making the distributions and failing to recover funds improperly withdrawn from an annuity.

Wells Fargo demurred to the petition, arguing the distributions were authorized by the trust instrument, and Wells Fargo was required to comply with Lynn's instructions, and those of Brandi, as Lynn's attorney-in-fact under a durable power of attorney. The trial court granted the demurrer without leave to amend.

Lynn appeals, offering several new theories of liability. Among other things, Lynn argues that Brandi's durable power of attorney does not extend to trust transactions, and Wells Fargo breached a duty to the trust by failing to check or enforce the asserted limits on Brandi's authority. These theories are not expressed in the petition. Although we liberally construe the allegations of the petition on demurrer, we cannot reasonably construe the petition as alleging the trust transactions were ultra vires, rather than the product of undue influence or financial elder abuse.

We conclude the trial court properly sustained Wells Fargo's demurrer. Nevertheless, we will reverse with directions to the trial court to grant Lynn leave to amend the petition with respect to her first cause of action for breach of trust, based on the allegedly excessive distributions from the trust, should she so choose. We express no view on the merits of any such amended petition.

## I. BACKGROUND

Lynn is a septuagenarian. She suffered a hemorrhagic stroke in October 2012, which left her physically and mentally weakened, but not incapacitated. According to the petition, Lynn requires assistance with daily activities and experiences episodes of

confusion and disorientation. Despite these limitations, which are said to be apparent, Lynn insists that she has always retained capacity to manage her affairs.

Brandi is Lynn's former daughter-in-law. Brandi lived with Lynn during the four-year period at issue in this case. According to the petition, "Brandi exercised near complete control over Lynn. She decided what Lynn ate, when she ate, what room she occupied in the house, in what town they would live, when Lynn could leave the house, and who Lynn could see." Over time, Brandi came to act as Lynn's caregiver, transporting Lynn to doctor's appointments and administering her medication. According to the petition, Brandi neglected Lynn, causing her to develop bedsores and sepsis. As relevant here, the petition alleges that Brandi also manipulated Lynn and subjected her to undue influence and financial elder abuse. These allegations are described in greater detail below.

A.    *The Trust*

Lynn is the settlor and beneficiary of the trust, which was established on October 20, 2006, and restated on March 19, 2009. Lynn amended the trust in August 2015 to appoint Wells Fargo as trustee. At the time, the trust's assets were worth approximately $3,185,000.

Lynn participated in a budgeting meeting with Wells Fargo in 2015 or 2016. The parties decided that Wells Fargo would distribute $16,500 to Lynn from the trust each month, for a total of $198,000 per year. The parties also decided that various expenses would be paid out of trust assets, including property taxes and life insurance premiums. According to the petition, Lynn was emphatic that she wanted to preserve the trust assets so they would last for the remaining years of her life. Unfortunately, Brandi had other plans, or so the petition alleges.

B.    *The Distributions from the Trust*

A pattern of large distributions from the trust began almost immediately, despite the conservative plan discussed at the budgeting meeting. According to the petition,

3

distributions of $558,205 and $523,000 were made in 2015 and 2016, respectively. Distributions of $752,000 were made in 2017. Distributions of $1,184,000 were made in 2018. The petition alleges that most of these distributions were made to an account held outside the trust, over which Brandi exercised signature authority.

C.     *The Home Visit*

Wells Fargo fiduciary specialists visited Lynn at her home in Yuba City in January 2019. According to the petition, the fiduciary specialists observed Lynn's interactions with Brandi and "concluded there was a high likelihood Lynn was vulnerable to undue influence, Brandi was exerting undue influence over Lynn, Brandi was likely to forge Lynn's name on important documents, and Brandi was personally interested in and dependent on Lynn's money." The petition alleges that the home visit gave Wells Fargo "actual notice" that Brandi was exercising undue influence over Lynn and "abusing her power for her own benefit as Lynn's attorney in fact."

D.     *The Annuity Funds*

The trust held an annuity from Protective Life Insurance. The petition alleges that Lynn signed a withdrawal request on May 13, 2019, asking Protective Life Insurance to transfer $295,000 from the annuity to an account outside the trust, over which Brandi had signature authority. The petition further alleges—and the parties appear to agree—that Protective Life Insurance improperly accepted the request and distributed the annuity funds to an account held by Lynn outside the trust.[2]

Wells Fargo became aware of the transfer on May 21, 2019. Wells Fargo representatives contacted Lynn and Brandi on May 28, 2019.[3] The Wells Fargo

---

[2] The parties agree that Protective Life Insurance should have sought approval for the transfer from Wells Fargo as trustee.

[3] Wells Fargo was, at the time, seeking instructions from the Placer County Superior Court regarding how to discharge its duties as trustee.

4

representatives explained that the annuity funds belonged to the trust, and Lynn was not authorized to request the transfer because she was not the trustee.  Brandi and Lynn informed the Wells Fargo representatives that approximately $98,540 of the annuity funds had already been spent.  However, they agreed to cooperate in the return of the remaining annuity funds (approximately $196,460) to Protective Life Insurance.

Wells Fargo placed a three-day hold on the account holding the remaining annuity funds on May 29, 2019.  A Wells Fargo vice president informed Brandi on June 3, 2019, that Wells Fargo would be transferring the funds from Lynn's checking account to an account held by the trust.  The vice president also informed Brandi that the trustee would no longer make monthly $16,500 distributions to Lynn's checking account but would only deposit funds sufficient for Lynn's living expenses and other needs.

On June 5, 2019, Wells Fargo attempted to transfer the remaining annuity funds from Lynn's checking account to a separate sub-account held by the trust.  The transfer was unsuccessful because Brandi had visited a Wells Fargo branch in the period after the three-day hold expired, but before Wells Fargo attempted the transfer, and withdrawn nearly the entire account balance.

E.      *The Capacity Petition*

On May 24, 2019 (after the transfer by Protective Life Insurance), Wells Fargo filed a petition in Placer County Superior Court, seeking instructions as to whether Lynn retained the right to control the distribution of income and principal from the trust, or whether the trust should be administered as though she were incapacitated (the capacity petition).  The capacity petition and related filings are attached as exhibits to Lynn's petition.

The capacity petition explains that the trust instrument contemplates alternative forms of administration, depending on whether Lynn retains capacity.  The capacity petition elaborates: "For so long as Lynn retains capacity to effectively manage her property or financial affairs, Lynn has the absolute right to control the distribution of

5

income and principal of the Trust, and she may require the Trustee to make distributions and principal for any purpose, even to the complete exhaustion of all trust property." By contrast: "During any period of time that Lynn lacks capacity, the Trustee (not Lynn) has broad discretion to make Trust distributions of income and principal for any purpose, but with a strong focus on Lynn's general welfare and comfort; and the Trustee is not required to make any distributions."

The capacity petition explains that Wells Fargo was concerned that Lynn may have lost capacity to manage her affairs, noting she "appeared confused and disoriented" during the January 2019 home visit with fiduciary specialists. The capacity petition also explains that "the distributions that Lynn has directed from the Trust either personally or through . . . Brandi . . . have depleted the Trust estate to such an extent that the trust will be prematurely exhausted if the distributions to Lynn continue at the current rate."

With respect to Brandi, the capacity petition avers: "Brandi is the agent for Lynn under a Durable Power of Attorney for Financial Management that was executed by Lynn in March 2015, with immediately effective powers, including powers related to banking transactions." The capacity petition adds: "[Wells Fargo] is informed and believes that Brandi, as agent for Lynn under the power of attorney, is authorized to transact on Lynn's Wells Fargo Bank checking account, which Lynn holds outside of the Trust."

Lynn objected to the capacity petition through her counsel herein. She acknowledged that she tires easily and sometimes struggles to express herself. However, she represented that she retains capacity. Lynn explained that she had recently made changes to the management of her property and financial affairs, which would address some of the concerns raised by Wells Fargo. As relevant here, Lynn asserted that she had removed Wells Fargo as trustee, thereby mooting the capacity petition. Lynn also

6

asserted that she had "revoked the Durable Power of Attorney formerly held by her daughter-in-law Brandi."[4]

The Placer County Superior Court found that Lynn has capacity and entered an order dismissing Wells Fargo's capacity petition on August 2, 2019.

F.     *The Instant Petition*

Lynn filed the instant petition on June 12, 2020.  The petition asserts four causes of action against Wells Fargo, two of which remain at issue on appeal.  First, the petition alleges that Wells Fargo breached its duties as trustee by making excessive distributions from the trust, which were not for Lynn's benefit.  Specifically, the petition alleges that Wells Fargo knew or should have known that Brandi was exercising undue influence over Lynn, but failed to intervene before May 2019, when Wells Fargo filed its "belated" capacity petition.

Second, the petition asserts that Wells Fargo breached its duties as trustee by failing to enforce a claim against Protective Life Insurance for releasing the annuity funds and failing to preserve or recover the remaining funds.  According to the petition, "Brandi stole $98,540 between the time Wells Fargo was aware of the distribution [of annuity funds] by Protective [Life Insurance] and when Wells Fargo finally contacted Brandi and Lynn about the improper distribution.  Wells Fargo was negligent in allowing the three day hold on the remaining $196,460 to expire before it had removed and secured those

---

[4]  Lynn attached a copy of a document entitled "Revocation of Durable Power of Attorney and Notice of Revocation" to the opposition.  The document, which is signed by Lynn and Brandi, states, in part:  "I . . . give notice of revocation and hereby revoke that durable power of attorney appointing BRANDI . . . as my agent and empowering such agent to act as my attorney-in-fact."  Lynn also attached a declaration from one of her attorneys.  The declaration avers that the attorney had met with Lynn and "two of Lynn's family members, one of whom Lynn removed as her agent under a previously executed General Durable Power of Attorney."

funds.  As a result, Brandi stole the remaining $196,460.  Wells Fargo failed to assert claims against Protective [Life Insurance] or Brandi for their respective negligence and elder abuse."

G.      *Wells Fargo's Demurrer*

Wells Fargo demurred to the petition in August 2020.  Wells Fargo argued the petition fails to state facts sufficient to constitute a cause of action for breach of trust under section 1.04(d) of the trust instrument, which applies so long as Lynn retains capacity and provides, in pertinent part:  "I have the absolute right to control the distribution of income and principal from my trust.  The Trustee will distribute to me, or to the persons or entities that I specify, as much of the net income and principal of the trust property as I may direct from time to time.  The Trustee may distribute trust income and principal to me or for my unrestricted use and benefit, even to the exhaustion of all trust property."[5]

Wells Fargo also relied on Probate Code section 16001, subdivision (a), which provides:  "Except as provided in subdivision (b), the trustee of a revocable trust shall follow any written direction acceptable to the trustee given from time to time (1) by the person then having the power to revoke the trust or the part thereof with respect to which the direction is given or (2) by the person to whom the settlor delegates the right to direct the trustee."[6, 7]

---

[5] It is undisputed that section 1.04(d) of the trust defines Wells Fargo's duties as trustee, rather than the alternative sections that would have applied had Lynn been found to lack capacity.

[6] Further undesignated statutory references are to the Probate Code.

[7] Section 16001, subdivision (b) provides:  "If a written direction given under subdivision (a) would have the effect of modifying the trust, the trustee has no duty to follow the direction unless it complies with the requirements for modifying the trust."

Wells Fargo also relied on section 16462, subdivision (a), which provides: "Notwithstanding Section 16461, a trustee of a revocable trust is not liable to a beneficiary for any act performed or omitted pursuant to written directions from the person holding the power to revoke, including a person to whom the power to direct the trustee is delegated."

Together, Wells Fargo said, the trust instrument and relevant statutes required the trustee to obey Lynn's instructions, "even to the exhaustion of all trust property." Wells Fargo acknowledged that Brandi was alleged to have directed many of the distributions. With respect to Brandi's instructions, Wells Fargo pointed to allegations in the petition and exhibits thereto, all indicating that she had been Lynn's attorney-in-fact under a durable power of attorney. Relying on section 4300, Wells Fargo argued that the trustee was also required to comply with Brandi's instructions. (§ 4300 ["A third person shall accord an attorney-in-fact acting pursuant to the provisions of a power of attorney the same rights and privileges that would be accorded the principal if the principal were personally present and seeking to act"].)

Lynn opposed the demurrer. She argued that Wells Fargo could not rely on the existence of a durable power of attorney, because the petition alleged only that any power of attorney Brandi might have held had been revoked. She also argued that Wells Fargo's reliance on section 16001, subdivision (a) was misplaced, because the distribution instructions were not alleged to have been in writing. She also argued that Wells Fargo breached its duty as trustee by making distributions that were not the product of Lynn's free will and failing to act sooner to investigate Brandi's undue influence and financial elder abuse.

The trial court sustained the demurrer without leave to amend and entered judgment in Wells Fargo's favor. This appeal timely followed.

## II. DISCUSSION

### A. *Standard of Review*

On appeal from a judgment based on an order sustaining a demurrer, we assume all the facts alleged in the complaint (or petition) are true. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 528.) We accept all properly pleaded material facts but not contentions, deductions, or conclusions of fact or law. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) We may also consider matters subject to judicial notice. (*Ibid.*) We determine de novo whether the complaint (or petition) alleges facts sufficient to state a cause of action under any legal theory. (*Committee for Green Foothills v. Santa Clara County Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.) We read the complaint (or petition) as a whole and its parts in their context to give the pleading a reasonable interpretation. (*Evans v. City of Berkeley, supra,* at p. 6.)

When a trial court has sustained a demurrer without leave to amend, "we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*) "Whether a plaintiff has made the required demonstration is not necessarily limited to the matters presented to the trial court. Code of Civil Procedure section 472c, subdivision (a) provides: 'When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is open on appeal even though no request to amend such pleading was made.' " (*Foster v. Sexton* (2021) 61 Cal.App.5th 998, 1024.) Accordingly, " '[t]he issue of leave to amend is always open on appeal, even if not raised by the plaintiff.' " (*Ibid.*)

### B. *Excessive Distributions*

We begin by attempting to clarify Lynn's theory of liability. As we will explain, Lynn's theory has changed significantly from the time of the petition through her briefing

on appeal. These changes amount to an implicit, though perhaps inadvertent, concession that the original petition does not state facts sufficient to constitute a cause of action. We conclude the trial court properly sustained the demurrer with respect to the first cause of action for breach of trust, but Lynn should have an opportunity to amend the petition to state a cause of action under her current theory, if she can.

As noted, the first cause of action alleges Wells Fargo breached a duty as trustee by making excessive distributions from the trust. The petition alleges: "Many if not all of these extra distributions were directed by Brandi and paid into the Personal Account, over which Brandi exercised signature authority." The petition further alleges that Wells Fargo had actual notice, by the time of the home visit in January 2019, that "Brandi was exercising undue influence over Lynn" and "abusing her power for her own benefit as Lynn's attorney in fact." The petition suggests Wells Fargo should have refused to make the distributions or acted sooner to protect Lynn from Brandi's misappropriations.

The opening brief takes a different tack. The opening brief continues to assert that Brandi exercised undue influence over Lynn and directed excessive distributions from the trust. But the opening brief does not argue that Brandi abused her authority as Lynn's attorney-in-fact. Rather, the opening brief argues the trial court erred in assuming Brandi had any such authority. According to the opening brief, the petition permits an inference that Brandi may have had a power of attorney at some point but does not permit any inferences concerning the scope of Brandi's supposed powers. The opening brief argues Wells Fargo breached a duty by failing to verify the existence and scope of Brandy's power of attorney, if any. This theory does not appear in the petition.

The opening brief differs from the petition in other respects as well. The petition alleges the excessive distributions were the product of Brandi's undue influence over Lynn. The opening brief argues Brandi exercised undue influence over Lynn, but suggests Brandi directed the distributions without Lynn's knowledge or approval, not that she overcame Lynn's free will. The opening brief also argues that Wells Fargo breached

11

a duty as trustee by acting on Brandi's *oral* instructions, rather than requiring written ones. These allegations do not appear in the petition either.

Wells Fargo's response to the opening brief was accompanied by a request for judicial notice of a document entitled, "DURABLE POWER OF ATTORNEY FOR FINANCIAL MANAGEMENT" (the DPOA). The DPOA appears to have been signed by Lynn on March 11, 2015, and purports to give Brandi power of attorney over banking transactions, insurance transactions, estate transactions, and certain living trust transactions. Wells Fargo argues the DPOA puts the lie to Lynn's contention that Brandi lacked authority to direct distributions from the trust.

Lynn has responded to the appearance of the DPOA with another change in course. Lynn's reply brief abandons the contention that Wells Fargo breached a duty as trustee by acting on Brandi's oral instructions. The reply brief also reframes Lynn's challenge to Brandi's authority as attorney-in-fact, resulting in further changes to her first cause of action against Wells Fargo.

Lynn's reply brief encourages us to grant Wells Fargo's request for judicial notice (which we will do, but only for the limited purpose of recognizing the existence of the DPOA). She concedes that Brandi was acting as her attorney-in-fact under the DPOA during the relevant period. She also acknowledges that Brandi's powers extended to certain trust matters. However, she argues Brandi was not authorized to direct distributions from the trust under the DPOA.[8]

With respect to the trustee, the reply brief argues Wells Fargo had an absolute duty to follow the conservative monthly budget set by Lynn at the initial budgeting meeting

---

[8] This is so, Lynn says, for two reasons. First, Lynn argues an attorney-in-fact's power to direct distributions from a trust must be specifically enumerated in the power of attorney under section 4264, and here, it was not. Second, Lynn argues Brandi had no authority to direct distributions contrary to Lynn's intent to use trust assets conservatively. We decline to reach these arguments here, for the reasons stated in the text.

12

and could not take conflicting orders from Brandi without first confirming that Lynn agreed to them, preferably in writing. The reply brief also argues, somewhat incongruously, that Wells Fargo breached a duty to ensure that Brandi was not exceeding her powers under the DPOA, and Wells Fargo was not entitled to rely on section 4303, as the petition does not allege Wells Fargo actually had the DPOA during the relevant period.[9] Lynn's current theories of liability thus revolve around the DPOA, an instrument only indirectly discussed in the petition.

Lynn suggests we should liberally construe the petition to encompass her changing theories. She points to allegations that Brandi directed the allegedly excessive distributions and was "abusing her power for her own benefit as Lynn's attorney in fact." But these allegations were tethered to Lynn's undue influence and financial elder abuse theories. They were not offered in connection with any argument that Brandi was acting pursuant to the DPOA, the terms of which authorized some trust transactions but not others. Nor were they tied to any theory that Wells Fargo breached a duty in failing to determine the scope of the DPOA. To the contrary, Lynn previously argued the trial court erred in assuming there was any power of attorney in effect at all. We cannot

---

[9] Section 4303 establishes a safe harbor for third parties who act in good faith reliance on a power of attorney, and provides, in pertinent part:

"(a) A third person who acts in good faith reliance on a power of attorney is not liable to the principal or to any other person for so acting if all of the following requirements are satisfied:

"(1) The power of attorney is presented to the third person by the attorney-in-fact designated in the power of attorney.

"(2) The power of attorney appears on its face to be valid.

"(3) The power of attorney includes a notary public's certificate of acknowledgment or is signed by two witnesses."

13

reasonably construe the allegations of the petition to encompass a cause of action premised on Lynn's newly minted theory.

The parties advance competing interpretations of the DPOA and invite us to consider whether the DPOA's terms authorized Brandi to direct distributions from the trust.[10] This we decline to do. The terms of the DPOA have only recently taken center stage in this case. They were not alleged in the petition nor presented to the trial court nor even addressed in Lynn's opening brief. As such, they are not appropriately before us now. Accordingly, though we take judicial notice of the existence of the DPOA, we decline to consider the parties' arguments concerning the proper interpretation of that instrument today.

As we have suggested, Lynn goes to considerable lengths to rewrite the petition and develop new legal theories on appeal. These new allegations and arguments implicitly concede that the actual allegations of the petition do not state facts sufficient to constitute a cause of action. We therefore conclude the trial court properly sustained the demurrer to the first cause of action for breach of trust. We will, however, touch upon Lynn's new arguments and allegations in connection with her request for leave to amend, which we take up *post*.

C.    *Annuity Funds*

Lynn's second cause of action against Wells Fargo alleges the trustee breached duties in connection with the annuity funds withdrawn from Protective Life Insurance. As noted, the petition alleges Lynn submitted a written request to Protective Life Insurance, seeking to withdraw $295,000 from an annuity held by the trust, and transfer those funds to an account of Lynn's held outside the trust, over which Brandi exercised

---

[10] Wells Fargo has filed a motion to strike the new arguments in Lynn's reply brief or, in the alternative, to submit a sur-reply regarding the interpretation of the DPOA. We have denied Wells Fargo's motion.

14

signature authority.[11]  Protective Life Insurance improperly accepted the request and transferred the funds.  Brandi and Lynn spent approximately $98,540 of the annuity funds but agreed to cooperate in the return of the remaining funds (approximately $196,460) to Protective Life Insurance.  Wells Fargo placed a three-day hold on Lynn's checking account on May 29, 2019.  The hold expired, and Brandi withdrew the remaining annuity funds sometime before June 5, 2019, when Wells Fargo attempted to transfer the funds to a separate sub-account held by the trust.  The petition alleges Wells Fargo breached duties to the trust by allowing the three-day hold to expire before attempting to recover the remaining annuity funds and failing to bring appropriate claims against Protective Life Insurance and/or Brandi.  The trial court sustained Wells Fargo's demurrer to the second cause of action without discussion.  We perceive no error.

Lynn observes section 16006 required Wells Fargo as trustee to "take reasonable steps under the circumstances to take and keep control of and to preserve the trust property."  (§ 16006.)  Lynn argues with some force that Wells Fargo's duty to take reasonable steps to control and preserve trust property included a duty to transfer the remaining annuity funds to the trust sub-account before the three-day hold expired.  She emphasizes that Wells Fargo had good reason to be concerned about Brandi's influence on Lynn, and Lynn's ability to manage her affairs.  Indeed, Wells Fargo was contemporaneously pursuing the capacity petition in Placer County Superior Court.  (See § 16004.5, subd. (b)(4) [recognizing the trustee's right to "[w]ithhold any portion of an otherwise required distribution that is reasonably in dispute"].)

---

[11]  Lynn's opening brief suggests that Brandi may have forged the request to Protective Life Insurance.  This allegation does not appear in the petition.  To the contrary, the petition specifically alleges that, "Lynn signed a Withdrawal Request form in her individual capacity and requested the withdrawal of $295,000 from the Annuity."

15

The problem for Lynn, however, is that Wells Fargo's statutory duties as trustee "must give way to directions contained in the governing trust instrument." (*Copley v. Copley* (1981) 126 Cal.App.3d 248, 279; *Estate of Giraldin* (2012) 55 Cal.4th 1058, 1068 ["If the trustee's duty is to the settlor, and the trustee acts pursuant to the settlor's directions, the trustee has violated no duty"].) Here, the trust instrument gave Lynn the "absolute right" to withdraw money from the trust so long as she retained capacity. It is undisputed that Lynn had capacity at all relevant times. Wells Fargo cannot be said to have breached a trust duty by allowing Lynn to do what she was legally entitled to do.[12] The trial court properly sustained the demurrer to Lynn's second cause of action for breach of trust.

D.      *Leave to Amend*

We now come to the question of leave to amend. Lynn acknowledges her allegations concerning Brandi's power of attorney "have some marginal ambiguity," and proposes to "allege facts which would demonstrate Wells Fargo could not rely on the DPOA to escape liability for following Brandi's wrongful orders." We perceive a reasonable possibility that Lynn could amend the petition to allege facts sufficient to state a cause of action for breach of trust based on her newly articulated theory that Wells Fargo was not entitled to rely on the DPOA. (See Code Civ. Proc., § 472c, subd. (a) ["When any court makes an order sustaining a demurrer without leave to amend the question as to whether or not such court abused its discretion in making such an order is

---

[12] It is immaterial that the annuity funds were originally held in the name of the trust and were then transferred to an account held outside the trust. (*Steinhart v. County of Los Angeles* (2010) 47 Cal.4th 1298, 1319 ["Under general principles of trust law, trust beneficiaries hold 'an equitable estate or beneficial interest in' property held in trust and are ' "regarded as the real owner[s] of [that] property." ' [Citation.] The trustee is ' "merely the depositary of the legal title" ' to the property [citation]; ' "the legal estate" ' the trustee holds ' "is . . . no more than the shadow . . . following the equitable estate" ' "].)

16

open on appeal even though no request to amend such pleading was made"]; and see *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460 ["Contrary to long-standing rules generally precluding a party from changing the theory of the case on appeal [citations], a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action, thereby showing the trial court 'abused its discretion' [citation] in not granting leave to amend"].)

Lynn does not propose any amendment to cure the second cause of action for breach of trust based on the withdrawal of the annuity funds. Accordingly, we conclude the trial court properly sustained the demurrer to the second cause of action without leave to amend.

## III. DISPOSITION

The judgment is reversed with directions to the trial court to grant Lynn Garlick and Jerome Tenney, as trustee of the Lynn Margaret Garlick Revocable Trust, leave to amend the petition. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/s/

_____
RENNER, J.

We concur:

/s/

_____
HULL, Acting P. J.

/s/

_____
KRAUSE, J.