Filed 3/7/25  Tu v. Deutsch CA6
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| NANCY TU, <br><br>     Plaintiff and Appellant, <br><br> v. <br><br> BRIAN DEUTSCH, <br><br>     Defendant and Respondent. | H051150 & H051216 <br> (Santa Clara County <br>  Super. Ct. No. 20CV369118) |

Plaintiff Nancy Tu was terminated from her corporate employer, Chefling, Inc. (Chefling).  She sued Chefling, alleging wrongful termination and Labor Code violations.  She amended the complaint to add three individual members of Chefling's board of directors as defendants:  Amar Krishna, Jeff Quan Xie, and Brian Deutsch.  The amended complaint alleged the individual defendants were personally liable under Labor Code section 558.1, which imposes liability on "an owner, director, officer, or managing agent of the employer" who "violates, or causes to be violated" certain Labor Code provisions.

The trial court sustained a demurrer with leave to amend as to director Deutsch, and plaintiff filed the operative third amended complaint.  The trial court ultimately sustained Deutsch's demurrer to the operative complaint without leave to amend.  Although we conclude that the operative complaint failed to state a cause of action against Deutsch, we will reverse the judgment because plaintiff has demonstrated a reasonable possibility that further amendment may cure the defects in the operative complaint.

## I.  TRIAL COURT PROCEEDINGS

Plaintiff filed the initial complaint in 2020, with Chefling as the sole named defendant.  Deutsch is not mentioned in the initial complaint.  She alleged she was recruited to work for Chefling in 2018 by Krishna, who was Chefling's co-founder and chief executive officer.  Plaintiff accepted employment with Chefling as the business development director based on an offer that promised a base salary plus eligibility for performance bonuses.  Plaintiff alleged she reported directly to Krishna and Chefling's other co-founder, Xie.  The initial complaint summarized instances of gender discrimination alleged to have been committed by Krishna and Xie.  Plaintiff alleged her work led to two business partnerships, "thereby reaching her bonus targets, as set by" Krishna.  Krishna "promised to pay out Plaintiff's bonus wages" by her one-year employment anniversary.  Xie later "re-committed to Plaintiff that Defendants would pay a portion of her bonus following the close" of an investment by one of the business partnerships she helped negotiate.  That investment was announced before plaintiff was terminated.

Plaintiff was "abruptly fired" by Xie in May 2019.  The initial complaint alleged: "Defendants refused to pay Plaintiff's unpaid wages.  Xie told Plaintiff this was because of a new policy that was 'discussed with the board,' which consisted of BSH and XV Venture Capital, that only current and/or existing employees were entitled to receive bonus wages."  (Capitalization omitted.)  Among other things, the initial complaint alleged Chefling misclassified plaintiff as an employee "exempt from various wage and hour entitlements under California Law."  (Citing Lab. Code, §§ 201–203.)

In a second amended complaint filed in April 2022, plaintiff substituted Krishna, Xie, and Deutsch for three "Doe" defendants.  (A first amended complaint did not add any allegations relevant to this appeal.)  The second amended complaint repeated the allegations about gender discrimination by Krishna and Xie, and the allegation that plaintiff reported directly to them.  It repeated the allegation from the initial complaint

2

that Xie told plaintiff she would not receive her bonus "because of a new policy that was 'discussed with the board,' which consisted of BSH and XV Capital." The second amended complaint added a new allegation related to that decision: "Based on Xie's statement, Plaintiff is informed and believes, and thereon alleges, that all of the board members, including Xie, Krishna, and Deutsch, had been involved in all aspects of her performance evaluations, payrate, position responsibilities and duties, hours worked, collaboration with partnerships, discretionary and non-discretionary bonus payment, equity payment, and termination." (Capitalization omitted.)

The second amended complaint did not allege specific conduct by Deutsch, but merely listed him along with Krishna and Xie in various allegations based on information and belief. Relevant here, the seventh cause of action (alleging violations of Labor Code sections 201 and 202 regarding timely payment of wages at the conclusion of employment) stated: "Pursuant to Labor Code § 558.1, Plaintiff is informed and believes, and thereon alleges, that Defendants Krishna, Xie, and Deutsch, as owners, directors, officers and/or managing agents of Chefling, were directly involved in, oversaw, and/or managed Plaintiff's performance evaluations, payrate, position responsibilities and duties, hours worked, collaboration with partnerships, discretionary and non-discretionary bonus payment, equity payment, and termination." (Capitalization omitted.)

Deutsch, Krishna, and Xie demurred to the second amended complaint, arguing among other things that plaintiff failed to allege facts sufficient to state a cause of action for Labor Code section 558.1 liability. The trial court sustained the demurrer with leave to amend as to Deutsch, given the absence of substantive allegations against him other than that he was a member of Chefling's board of directors. The trial court overruled the demurrer as to defendants Krishna and Xie.

Plaintiff filed the operative third amended complaint in October 2022, alleging among other things that Krishna, Xie, and Deutsch were personally liable under Labor

3

Code section 558.1 for various Labor Code violations. The operative complaint added allegations about specific conduct by Deutsch. It alleges Krishna, Xie, and Deutsch interviewed plaintiff before she was hired. Regarding the written offer plaintiff received before starting her employment, the operative complaint alleges "Krishna, Xie, and Deutsch were the only individuals on the e-mail correspondence and accordingly, approved the terms [of] Plaintiff's employment."[1] It further alleges the offer indicated the amount of any bonus "would be 'decided in a Board Call,' which would have consisted of, at least, Krishna, Xie, and Deutsch." It alleges Deutsch sent plaintiff a welcome e-mail when she started with the company, and that Deutsch introduced plaintiff to two companies who were potential business partners.

The operative complaint also includes factual allegations that are inconsistent with plaintiff's earlier complaints, without explaining the inconsistencies. Unlike the earlier complaints, which alleged plaintiff reported only to Krishna and Xie, the operative complaint alleges plaintiff reported directly to Krishna, Xie, *and* Deutsch. The second amended complaint alleged "Plaintiff was abruptly fired by Xie," who told her, " 'We [Defendants] have made the decision that your position is not available' " (capitalization omitted); the operative third amended complaint alleges plaintiff "was informed that the decision to terminate her was made by Chefling's board (i.e., Deutsch), as follows: Xie told Plaintiff that the reason for her termination was a position elimination, stating: 'We [Defendants] have made the decision that your position is not available.' " (Capitalization omitted; bracketed language is from the operative complaint.) The second amended complaint alleged Xie told plaintiff she would not receive her bonus "because of a new policy that was 'discussed with the board,' which consisted of BSH and XV

---

[1] The trial court took judicial notice of a copy of the e-mail as an item incorporated by reference in the operative complaint. We likewise take judicial notice of the e-mail as a document properly noticed in the trial court. (Evid. Code, § 459, subd. (a).) The e-mail was sent to plaintiff by Krishna, with Xie and Deutsch carbon-copied.

4

Capital;" the operative complaint removed reference to BSH and XV Capital as board members. The operative complaint also added an extended quotation attributed to Xie, indicating that he told plaintiff: " 'Uh, here's the thing. You don't have any bonus [sic].... The bonus, you know we thought about that. A bonus is kind of a motivation for the current employees, existing employees. ... And, you know, it's a hard decision. We're actually not alone making this decision. We discuss with the Board [sic]. And this is a final decision we've made.' " The operative complaint goes on to allege that "at the time of Plaintiff's termination, the Board included Krishna, Xie, and Deutsch." (Capitalization omitted.)

Deutsch demurred once again to the third amended complaint. The trial court again sustained Deutsch's demurrer, this time without leave to amend. In its written order, the court noted plaintiff had voluntarily dismissed certain causes of action, leaving two containing allegations against Deutsch: the seventh cause of action (for failure to timely pay all wages) and the 10th cause of action (for unfair competition, based on the wage violation alleged in the seventh cause of action). The court stated, "Whether the seventh cause of action (which focuses on the alleged failure to pay waiting time penalties) is adequately alleged against defendant Deutsch depends, in turn, upon whether Plaintiff has sufficiently alleged that Deutsch qualifies as 'an owner, director, officer, or managing agent of the employer' under Labor Code section 5[5]8.1." The court determined that the "newly added allegations in the [operative complaint] that Deutsch, two years into this litigation, was a co-participant in the wrongdoing all along, even though it was previously alleged, consistently and repeatedly, to have been done personally by Krishna and Xie alone, are inconsistent with the prior pleadings." It further determined that neither the "single statement from Xie" nor the "new allegations that Deutsch participated in a job interview and communicated at least once with [plaintiff] after she was hired via email" stated "sufficient facts to demonstrate that Deutsch was a 'managing agent' or an 'owner,' 'director,' or 'officer' for purposes of Labor Code

5

section 558.1." The court denied leave to amend, reasoning it was "unable to discern any potentially valid amendment to the seventh and tenth causes of action as to Deutsch that would be consistent with [plaintiff's] theory of the case as alleged against the other defendants over the last two and a half years."

Plaintiff prematurely appealed from the order sustaining Deutsch's demurrer without leave to amend (case No. H051150). She then filed a second notice of appeal following entry of the judgment dismissing Deutsch (case No. H051216). We ordered the two appeals considered together for purposes of briefing, oral argument, and disposition.

## II.    DISCUSSION

### A.  THE DEMURRER WAS PROPERLY SUSTAINED

We review de novo a judgment of dismissal based on a sustained demurrer. (*Organizacion Comunidad de Alviso v. City of San Jose* (2021) 60 Cal.App.5th 783, 790.) We will reverse the dismissal if the allegations of the complaint state a cause of action under any legal theory. (*Ibid*.) We assume the truth of all facts alleged in the complaint (*id.* at pp. 790–791), but we do not consider conclusory factual or legal allegations. (*B & P Development Corp. v. City of Saratoga* (1986) 185 Cal.App.3d 949, 953.) "[A]llegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) "The plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer." (*Martin v. Bridgeport Community Assn., Inc.* (2009) 173 Cal.App.4th 1024, 1031.)

#### 1.  Changing Factual Allegations

A plaintiff " 'may not attempt to breathe life into a complaint by omitting relevant facts which made his previous complaint defective.' " (*Vallejo Development Co. v. Beck Development Co.* (1994) 24 Cal.App.4th 929, 946.) And "inconsistencies with prior pleadings must be explained; if the pleader fails to do so, the court may disregard the

6

inconsistent allegations." (*Ibid.*) Courts are " 'not bound to accept as true allegations contrary to factual allegations in former pleading[s] in the same case' " unless the plaintiff provides an adequate explanation for the inconsistency. (*Ibid.*; accord, *Hendy v. Losse* (1991) 54 Cal.3d 723, 742–743.)

The operative complaint is inconsistent with earlier pleadings as to three facts: to whom plaintiff reported at Chefling; the membership of Chefling's board of directors; and who made the decision to terminate plaintiff. We address them in turn.

The earlier complaints alleged plaintiff reported directly to Krishna and Xie, whereas the operative complaint alleges plaintiff reported directly to Krishna, Xie, *and* Deutsch. As plaintiff provides no explanation for the inconsistency about a matter within her personal knowledge, we will disregard the allegation about plaintiff reporting directly to Deutsch.

Regarding Chefling's board of directors, plaintiff alleged in her first two complaints that the board "consisted of BSH and XV Capital." The second amended complaint further alleged that the board "includ[ed] Xie, Krishna, and Deutsch." The operative complaint removed specific reference to BSH and XV Capital as members, with no explanation for the deletion. The operative complaint alleged that the board consisted of, "at least, Krishna, Xie, and Deutsch." Plaintiff now asserts on appeal that "Chefling's Board of Directors consisted of only three people: Krishna, Xie and Deutsch." Plaintiff has consistently pleaded since the second amended complaint that the board included *at least* Krishna, Xie, and Deutsch, which we will assume for purposes of our analysis.

As to the decision to eliminate plaintiff's position, earlier iterations of the complaint alleged she was "abruptly fired by Xie," who told her, " 'We [Defendants] have made the decision that your position is not available.' " (Capitalization omitted.) The operative complaint alleges plaintiff "was informed that the decision to terminate her was made by Chefling's board (i.e., Deutsch), as follows: Xie told Plaintiff that the

7

reason for her termination was a position elimination, stating: 'We [Defendants] have made the decision that your position is not available.' " (Capitalization omitted; bracketed language is from the operative complaint.) Both versions are apparently based on a conversation plaintiff had with Xie in 2019. The operative complaint more clearly alleges that the board, as opposed to Xie, decided to terminate plaintiff. Although a departure from the initial pleadings, at least here we see some continuity in the references to "Defendants," such that we elect not to reject the new iteration.

### 2. Plaintiff Adequately Alleged a Labor Code Section 203 Violation

A threshold issue is whether plaintiff adequately alleged a Labor Code section 203 violation, which is a prerequisite to alleging a Labor Code section 558.1 violation. Labor Code section 203, subdivision (a) penalizes an employer's willful failure to pay "any wages of an employee who is discharged or who quits." California courts "construe the term 'wages' broadly to 'include not only the periodic monetary earnings of the employee but also the other benefits to which he is entitled as a part of his compensation.' " (*Schachter v. Citigroup, Inc.* (2009) 47 Cal.4th 610, 618.) "Incentive compensation, such as bonuses and profit-sharing plans, also constitute wages." (*Ibid.*) But a mere contingent expectation of receiving a bonus is not part of an employee's wage. (*Id.* at p. 621.) "Only when an employee satisfies the condition(s) precedent to receiving incentive compensation, which often includes remaining employed for a particular period of time, can that employee be said to have earned the incentive compensation (thereby necessitating payment upon resignation or termination)." (*Ibid.*)

The offer letter plaintiff received before she accepted employment described a discretionary bonus as follows: "Yearly Performance Bonus- Chefling will offer an annual performance bonus which will be decided in a Board Call and will be based on metrices like revenue goals, strategic partnerships with manufacturers, CPG companies etc. (no cap)." Plaintiff alleged that she satisfied the conditions precedent to receive that bonus by helping to secure two new business partnerships. She alleged those

8

partnerships were the bonus targets set by Krishna. She further alleged that Xie "re-committed to Plaintiff that Defendants would pay a portion of her bonus following the close" of an investment by one of those partners. It is undisputed that plaintiff was not paid a bonus upon termination. Applying our standard of review on demurrer under which we accept factual allegations as true, the foregoing adequately alleges that at least some amount of money related to plaintiff's bonus had become part of her wages for purposes of Labor Code section 203 before she was terminated.

### 3. The Allegations Fail to State a Cause of Action As To Deutsch

Under Labor Code section 558.1, a "person acting on behalf of an employer" may be held liable as an "employer" if that individual "violates, or causes to be violated, any provision regulating minimum wages or hours and days of work in any order of the Industrial Welfare Commission, or violates, or causes to be violated, [Labor Code] Sections 203, 226, 226.7, 1193.6, 1194, or 2802." (Lab. Code, § 558.1, subd. (a).) A " 'person acting on behalf of an employer' is limited to a natural person who is an owner, director, officer, or managing agent of the employer." (*Id.*, subd. (b).) Deutsch acknowledges that he was a director on Chefling's board of directors when plaintiff was terminated. The parties dispute whether the operative complaint adequately alleges Deutsch violated or caused to be violated relevant Labor Code provisions.

One court has described Labor Code section 558.1 as requiring that an individual "must either have been personally involved in the purported violation of one or more of the enumerated provisions; or, absent such personal involvement, had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation." (*Usher v. White* (2021) 64 Cal.App.5th 883, 896–897 [affirming summary judgment granted in favor of investor who did not participate in day-to-day operations or in operational or managerial decisionmaking].) Another court described the necessary

9

showing as follows: "in order to 'cause' a violation of the Labor Code, an individual must have engaged in some affirmative action beyond his or her status as an owner, officer or director of the corporation. However, that does not necessarily mean the individual must have had involvement in the day-to-day operations of the company, nor is it required the individual authored the challenged employment policies or specifically approved their implementation. But to be held personally liable he or she must have had some oversight of the company's operations or some influence on corporate policy that resulted in Labor Code violations." (*Espinoza v. Hepta Run, Inc.* (2022) 74 Cal.App.5th 44, 59–60 [substantial evidence in bench trial supported individual liability for company's sole owner who "admitted he had approved the policy regarding payment of truck drivers that violated various provisions of the Labor Code."].)

Disregarding certain inconsistent facts as we have discussed, the operative complaint alleges the following about Deutsch: he was one of three people who interviewed plaintiff for the position; he was copied on e-mail correspondence conveying the offer of employment; he sent plaintiff a welcome e-mail when she started working for Chefling; he introduced her to two potential business partners; he was on Chefling's board of directors (which consisted of at least Krishna, Xie, and Deutsch) when it eliminated plaintiff's position; and the decision not to give her a bonus after termination was "discuss[ed] with the Board." The foregoing facts are insufficient to show affirmative action by Deutsch—beyond mere status as a member of Chefling's board—relating to the particular Labor Code violations alleged by plaintiff. The operative complaint identifies no conduct committed specifically by Deutsch that is alleged to violate the Labor Code. Taking part in plaintiff's interview and introducing her to potential business partners have nothing to do with the Labor Code violations alleged (i.e., failure to timely pay wages after separation). Nor does board participation in the decision to eliminate plaintiff's position specifically result in those Labor Code violations. Even accepting as true the allegation that the decision to deny plaintiff a

10

bonus was discussed with the board while Deutsch was one of at least three directors, without more the allegation is inadequate to support individual liability under Labor Code section 558.1. The operative complaint does not allege that the board took a formal vote as a result of the discussion, nor does it allege that Deutsch took any sort of active role in the board discussion.

## B. LEAVE TO AMEND

We review the denial of leave to amend for abuse of discretion. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 971.) Leave to amend should be granted where it is reasonably possible an amendment would cure the defect that caused a demurrer to be sustained. (*Smith v. BP Lubricants USA Inc.* (2021) 64 Cal.App.5th 138, 145.) "Contrary to long-standing rules generally precluding a party from changing the theory of the case on appeal [citations], a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action." (*Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460 (*Connerly*); accord, *King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1061 [considering new factual allegations raised on appeal in determining whether to grant leave to amend].) And while the sham pleading doctrine is meant to prevent abuse of process, it "is not intended to prevent honest complainants from correcting erroneous allegations or to prevent the correction of ambiguous facts." (*Hahn v. Mirda* (2007) 147 Cal.App.4th 740, 751 (*Hahn*).)

We invited supplemental briefing on whether there is a reasonable possibility plaintiff can state a claim against Deutsch through further amendment. Relying on information that plaintiff contends was "withheld until after the demurrer was sustained," plaintiff proposes adding the following four paragraphs to the operative complaint:

"However, as Plaintiff subsequently learned, DEUTSCH was not a passive or inactive member of CHEFLING's Board of Directors, particularly as it concerned Plaintiff. Indeed, during all relevant times, Deutsch was the only investor in CHEFLING, a closely held company with only three board members. And Deutsch was

11

brought in as the only investor in Chefling specifically with the goal of using his money to hire a Business Development Director. Thus, Deutsch's involvement in hiring Plaintiff was the only time he ever got involved in CHEFLING's hiring process. DEUTSCH also worked with Tu to propose business leads and to achieve a major partnership with BSH Home Appliances. As such, it is not surprising that, as discussed below, DEUTSCH was directly involved in the decision to terminate Plaintiff without paying her bonus."

"As PLAINTIFF subsequently discovered, DEUTSCH's involvement in the decision to terminate her and deny her the earned, non-discretionary bonus went well beyond simply approving those decisions: DEUTSCH was directly involved in making those decisions in the first place. As revealed in text messages between XIE, KRISHNA, and DEUTSCH, the three Board members set up a call specifically to discuss Plaintiff's entitlement to her earned bonus: [screenshot of text messages omitted]

"As DEUTSCH subsequently testified in deposition, XIE, KRISHNA, and DEUTSCH then discussed whether Plaintiff was entitled to her earned, non-discretionary bonus: 'Q. Putting aside the text message, do you recall having any conversations with Chefling about Nancy wanting to have her stock options papered or asking about her bonus? [Objections] A. I don't recall anything regarding stock options and very generally do I recall the topic of a bonus. Q. What do you recall about the topic of a bonus? A. That Nancy felt she was entitled to one…. Q. [B]ut did you have an opinion as to whether or not Ms. Tu was entitled to a bonus? [Objections] A. Yes, I have an opinion. Q. And what is that opinion? That she was not.' DEUTSCH further confirmed that, during the conversation between himself, XIE, and KRISHNA, the Board decided Plaintiff would not be paid her bonus: 'Q. And again, I'm sorry, but just to clarify. You have no recollection of specifically what was discussed; is that right? [Objection.] A. The discussion was about if bonuses, I would [sic]. Q. And what do you recall about that discussion? [Objection.] A. That ultimately the bonus had not been earned. Q. And who ultimately came to that determination? A. The board.'

12

"Accordingly, the decision to terminate Tu and deny her pay of her bonus compensation was directly made by Deutsch, Xie, and Krishna as board members of Chefling."

Unlike the operative complaint, plaintiff's proposed amendment alleges specific conduct by Deutsch related to the decision to deny her bonus. Plaintiff alleges Deutsch, Xie, and, Krishna exchanged text messages about scheduling a call to discuss her entitlement to a bonus. Plaintiff purports to quote Deutsch's deposition testimony to the effect that he did not believe she was entitled to a bonus and that the board decided she had not earned a bonus. That Deutsch was personally consulted via text message about plaintiff's bonus suggests he "had sufficient participation in the activities of the employer, including, for example, over those responsible for the alleged wage and hour violations, such that the 'owner' may be deemed to have contributed to, and thus for purposes of this statute, 'cause[d]' a violation." (*Usher*, *supra*, 64 Cal.App.5th at pp. 896–897.) Plaintiff further alleges that the board consisted of only Deutsch, Xie, and Krishna. The allegation that he was one of three board members making the final decision to deny plaintiff's bonus may support a finding he was "personally involved in the purported violation of one or more of the enumerated provisions" (*ibid.*) to a greater extent than if the board had four or more members. We are satisfied that plaintiff has shown a reasonable possibility that further amendment would state a cause of action against Deutsch.

Deutsch argues that we should reject plaintiff's proposed amendments because they are inconsistent with earlier pleadings. We acknowledge that the number of board members alleged in the proposed amendment is inconsistent with earlier pleadings. And the level of Deutsch's involvement in the bonus decision is arguably inconsistent with earlier pleadings that identified only Xie and Krishna as the primary decisionmakers. But the sham pleading doctrine is "not intended to prevent honest complainants from correcting erroneous allegations or to prevent the correction of ambiguous facts." (*Hahn*,

13

*supra*, 147 Cal.App.4th at p. 751.)  Plaintiff contends the new board allegations are "based on subsequently learned facts:  that Chefling's board only consisted of three members during Tu's employment – Deutsch, Xie and Krishna – and not four members because BSH did not have a Board seat at that time."  Plaintiff further contends the text messages and deposition testimony relied on for the proposed amendments "were withheld until after the demurrer was sustained."  In light of those plausible explanations, the sham pleading doctrine does not apply.

Deutsch contends we should reject plaintiff's proposed amendments because they rely on facts outside the appellate record.  He argues we "may not consider facts that were not before the trial court."  But the procedural context is important here, and "a plaintiff may propose new facts or theories to show the complaint can be amended to state a cause of action."  (*Connerly*, *supra*, 229 Cal.App.4th at p. 460.)  Plaintiff has represented to this court that she possesses evidence supporting the proposed allegations, and we have determined those new facts demonstrate a reasonable possibility of stating a cause of action against Deutsch.

Although we had previously denied plaintiff's request to augment the record with text messages and deposition testimony that was not part of the trial court record, we did so because a motion to augment is designed for documents "filed or lodged in the case in superior court."  (Cal. Rules of Court, rule 8.155(a)(1)(A).)  The absence of certain evidence from the appellate record does not preclude plaintiff from proposing new allegations based on that evidence.  The strength of the new allegations will be tested by the trial court on remand.  Our decision is merely that plaintiff's proposed amendments demonstrate a reasonable possibility that she can state a cause of action against Deutsch.

### III.    DISPOSITION

The judgment dismissing Deutsch is reversed and the matter is remanded with instructions to allow plaintiff to file an amended complaint consistent with the proposed

14

allegations discussed in Part II.B. of this opinion. As the prevailing party, plaintiff is awarded her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

_____

Grover, Acting P. J.

**WE CONCUR:**

_____

Lie, J.

_____

Bromberg, J.

H051150, H051216
*Tu v. Deutsch*